**William L. DUNSTON, a/k/a William T. Vaughan, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7115.**

District of Columbia Court of Appeals.

Submitted Dec. 11, 1973.

Decided Feb. 13, 1974.

As Amended March 6, 1974.

Richard H. Mayfield, Washington, D. C., appointed by this court, was on the brief, for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, Joseph F. McSorley and William I. Martin, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, YEAGLEY, Associate Judge, and HOOD, Chief Judge, Retired.

YEAGLEY, Associate Judge:

Appellant was indicted and tried before a jury on a charge of burglary, D.C.Code 1973, § 22–1801. He was found innocent of burglary but was convicted of the lesser included offense of unlawful entry on property, D.C.Code 1973, § 22–3102. He appeals from his conviction, claiming that his arrest was effected through an unlawful entry and search, and that evidence re-

---

garding the circumstances of the arrest should have been excluded as fruits of an unlawful search and arrest. We affirm appellant's conviction.

On August 3, 1972, at approximately 5 a. m., a Metropolitan Police officer received a radio run that a burglary was in progress at 32 T Street, N.W. Arriving at the scene about five minutes later, he was told by Mrs. Barbara Robinson that she had observed an intruder in her apartment. She showed the officer where a small side window had been removed near the door of her apartment. She identified the intruder as a neighbor called "Willie", who was described as having "medium-dark skin with a large bush hair style" and wearing "a purple T-shirt, white dungarees and white-top tennis shoes." Mrs. Robinson added that Willie lived across the street at 37 T Street, N. W.

The officer proceeded to that address and identified himself, but was told that no Willie lived there and that the door would not be opened. He immediately went back to complainant's apartment and told her that he would seek a warrant for Willie's arrest the next day, but as he was leaving Mrs. Robinson informed him that she had just seen Willie appear on the porch of his apartment across the street. The officer inquired as to whether she was sure of what she said and was told that she was. The responding officer and two other policemen returned to apartment number one at 37 T Street, N. W., knocked, identified themselves as policemen and stated that they had information that Willie was within. The female voice responded that there was nobody by that name in the apartment. The officer then stated that Willie was suspected of a felony and that she would have to open the door for them. The door was opened and the police entered.

The officer proceeded to the back of the apartment where he opened a closet door and observed the appellant standing in the closet. He was wearing dungarees and white-top tennis shoes but had no clothing on from the waist up. In answer to a question, the appellant confirmed the fact that he was Willie. The officer informed him that he was "a suspect in a burglary which occurred about twenty minutes ago" and proceeded to advise appellant of his "Miranda rights". He was also told that he would have to accompany the officer across the street to be viewed by Mrs. Robinson and it was suggested that he put on the shirt that he had just taken off. Appellant put on a purple knit shirt which had been on top of the closet door. Mrs. Robinson identified appellant as the intruder in her apartment.

In Dorman v. United States, 140 U.S. App.D.C. 313, 318, 435 F.2d 385, 390 (1970), the Circuit Court, in dealing with a situation nearly identical to the one we are faced with, explained the similarity between searches for property and searches for suspected persons:

> [T]he basic principle, the constitutional safeguard that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overridden, is applicable not only in case of entry to search for property, but also in case of entry in order to arrest a suspect. . . .

The court then outlined both the general prohibition against warrantless searches and the narrow exceptions to that prohibition citing Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967):

> "[E]xcept in certain carefully defined classes of cases," a search of private property without proper consent is "unreasonable" unless authorized by a valid warrant (387 U.S. at 528–529, 87 S.Ct. at 1731), the exception being viewed as one to permit "prompt inspections, even without a warrant * * * in emergency situations." (387 U.S. at 539, 87 S.Ct. at 1736). [Dorman, supra at 318, 435 F.2d at 390.]

It went on to conclude that the facts before it justified a warrantless intrusion into a residence to effect an arrest.

 The facts in the instant case provide ample justification for the police action taken here. The officer on the scene had a report of the commission of a burglary made by an eyewitness complainant, which report was corroborated by a missing glass pane near the apartment door. The officer had received a positive identification of the perpetrator which included his name and address. Additionally the officer had received another eyewitness report from the complainant that the suspect was at that very moment in an apartment across the street. The officer, therefore, had highly credible information that a felony had been committed, that appellant had committed it, and that appellant was currently across the street in an apartment.

As to the necessity of obtaining a warrant, we observe that the police were in reasonably hot pursuit of the alleged perpetrator of a serious felony,[1] at about 5 a. m. We think that the exigencies of the circumstances were manifest.

The facts here are much stronger than they were in *Dorman,* insofar as they provide justification for a warrantless intrusion to effect an arrest. In *Dorman,* there was a four-hour delay between the commission of the offense and the warrantless intrusion into the apartment and the police had no definite information that the suspect was in the apartment beyond the fact that it was his residence. On the other hand, in the instant case, the lapse of time between the commission of the offense and the intrusion was less than thirty minutes and the police officer had received information from an eyewitness that the suspect was *currently* within the apartment.

In summary we find that the warrantless search of the apartment where appellant

was found was justified by the police officer having probable cause to believe that a fleeing felon was within and by the exigent circumstances which precluded the obtaining of an arrest warrant.[2] We note that in 1970 the Congress, recognizing that a warrantless entry to search or arrest might be justified under proper circumstances, enacted a law providing that "[the] officer, may break and enter" such premises when he "reasonably believes that admittance to the dwelling house or other building or vehicle is being denied or unreasonably delayed". D.C.Code 1973, § 23-591(a) and (b).

 We reaffirm, as did *Dorman, supra* at 320, 435 F.2d at 392, the heavy burden on the government to justify a warrantless intrusion into a residence to arrest a suspect, but feel that this burden was met in the instant case.

Affirmed.

---

1. Burglary in the first degree carries a maximum sentence of thirty years (D.C.Code 1973, § 22–1801(a)).

2. *See also* Warden v. Hayden, 387 U.S. 294 (1967); Frager v. United States, D.C.App.,

258 A.2d 259 (1969); United States v. Honesty, 148 U.S.App.D.C. 255, 459 F.2d 1279 (1971).