PEOPLE v OLAJOS

Docket No. 56922. Argued October 6, 1976 (Calendar No. 21).—Decided November 23, 1976.

Robert Olajos was convicted by a jury in Roscommon Circuit Court, Carl L. Horn, J., of assault with intent to do great bodily harm less than murder. The defendant's motion to suppress as evidence an M-1 rifle and spent cartridges seized by the police without a search warrant in the defendant's house, the scene of the assault, was denied. The defense presented at trial was intoxication, and to rebut the defense the prosecution, without objection by defendant, presented testimony by police officers concerning defendant's behavior on previous occasions. The Court of Appeals, Bronson, P. J., and Quinn and Van Valkenburg, JJ., affirmed per curiam (Docket No. 15602). Defendant appeals. *Held:*

1. The validity of the entry of the house by the police officers without a search warrant depends upon the reasonableness of their response to the situation as perceived by them. The crucial question .in ruling on the motion to suppress the evidence was the police officers' state of mind at the time.

2. The officers testified that they were shot at twice by a rifle fired from the defendant's house; that the defendant later emerged, uttering threats, with a shotgun; that there were at least two persons in the house when the shots were fired; and that they did not know whether other weapons or other people remained in the house when they entered. The record does not support the allegation that the officers knew prior to entry that no one was inside. Given the existing confusion and the emergency nature of the circumstances, the response of the police was reasonable to secure the house and any other weapons immediately to insure the safety of those outside.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 68 Am Jur 2d, Searches and Seizures §§ 41–44.

[2] 29 Am Jur 2d, Evidence §§ 425, 426.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.

[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[5] 75 Am Jur 2d, Trial § 164.

3. The M-1 rifle and the spent cartridge seized from the floor of the bedroom were admissible as evidence. The Court does not decide whether a cartridge found in a box filled with toys should have been suppressed. On this record, if there was error in its admission, it was harmless beyond a reasonable doubt.

4. The Supreme Court, except under very unusual circumstances, will not reverse on the basis of erroneous introduction of testimony where there was neither timely objection nor request for a curative instruction to the jury. The defense in this case was intoxication, and details of the prior incidents of defendant's intoxication and contact with police were actively pursued by defense counsel, probably as a matter of tactics. In any event, it does not appear that admission of the testimony resulted in a miscarriage of justice.

Affirmed.

1. SEARCHES AND SEIZURES—WITHOUT A WARRANT—REASONABLENESS —EVIDENCE—ADMISSIBILITY.

The validity of an entry without a warrant by police into a defendant's house, and therefore the admissibility of evidence found upon entry, depends upon the reasonableness of their response to the exigencies of the situation as perceived by them at the time of the entry.

2. CRIMINAL LAW—TRIAL—EVIDENCE—MOTION TO SUPPRESS.

It was within a trial court's sound discretion to allow at trial renewal of a pretrial motion to suppress evidence where the motion was based upon the testimony taken at the preliminary examination which did not sufficiently develop the facts surrounding the alleged illegal seizure of the evidence, and the facts were more fully developed at trial.

3. SEARCHES AND SEIZURES—WITHOUT A WARRANT—REASONABLENESS.

Entry and search of a defendant's house by police officers without a warrant was reasonable in response to the exigencies of the circumstances where the officers testified that they had been shot at twice by a rifle from inside the house; that the defendant had later emerged from the house uttering threats and carrying a shotgun; that there were at least two persons inside the house when the shots were fired; and that at least one weapon remained unaccounted for when they entered the house.

4. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING QUESTION.

Whether the admission of testimony was erroneous is not properly preserved for review, except under very unusual circum-

stances where there was no objection or request for curative instructions to the jury at trial.

5. Criminal Law—Evidence—Prior Conduct of Defendant.

Admission of testimony regarding a defendant's prior intoxication and contacts with police was not reversible error where there was no objection or request for curative instructions to the jury at trial, the defense was intoxication, details were actively pursued by defense counsel as a matter of tactics, and the testimony gave the jury a partial history of the defendant's drinking problems.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert McCormick* and *Thomas C. Nelson,* Assistants Attorney General, for the people.

*State Appellate Defender Office* (by *Roger L. Wotila)* for defendant.

Fitzgerald, J. Charged with assault with intent to commit murder, MCLA 750.83; MSA 28.278, defendant was convicted by a jury of assault with intent to do great bodily harm less than murder. MCLA 750.84; MSA 28.279. He was sentenced to a term of three to ten years in prison. The Court of Appeals affirmed, per curiam. We likewise affirm.

On May 20, 1972, at approximately 8:30 p.m., the Michigan State Police responded to calls reporting a domestic disturbance at defendant's home. Gunshots had been heard by the caller. Upon arriving, three officers observed defendant, another adult male, and several children inside the house. The children exited upon request. The other male, after a brief discussion with the officer in charge, refused to leave. Defendant could be seen moving back and forth between various rooms carrying a rifle. Defendant was called upon to leave the house, but did not oblige.

Meanwhile, officers from the Roscommon County

Sheriff's Department and Township Police arrived. Deputies Roy Anderson and Floyd Fultz went to the rear of the house. Anderson and Fultz testified that they observed an adult male, not the defendant, pointing out the bedroom window at their position. The individual said something. Seconds later, two shots were fired. The officers testified that they felt air disturbance from the first shot and that it narrowly missed them. All who testified were in agreement that the shots were fired from a rifle rather than a shotgun.

John Haveman, defendant's stepson, testified that he was in the bedroom with defendant, and that he drew defendant's attention to a shadow outside the window. Defendant turned and fired his rifle through the window. Haveman then departed rapidly from the house with his girlfriend. Of the approximately ten officers who testified at trial, only Walter Bair testified that he observed anyone leave the house shortly after the shots were fired. Bair stated that he saw a young man walk away from the building into the crowd.

Defendant was then told by loudspeaker to come out of the house. He appeared in the living room window with a green case from which he removed a shotgun. Shortly thereafter, he emerged from the front door carrying the shotgun, and walked towards the police uttering threats. He was disarmed by the officers, handcuffed, and placed in a patrol car. Several officers were then ordered into the house by Sergeant Hancock. Hancock testified that it was his understanding that there was another male inside the house. There was also a weapon, the rifle from which the shots had been fired, which had not been accounted for. All but one of the officers who entered the house testified that they were looking for weapons and persons, or that they were backing up other officers.

There was no one else in the house. The officers did seize an M-1 rifle and spent cartridge from the floor of the rear bedroom. Another spent cartridge was found nearby when an officer dumped out a cardboard box filled with toys.

On the basis of the preliminary examination transcript, defendant moved pretrial to suppress the rifle and spent cartridges. The motion was denied, but the trial court did indicate that the motion could be renewed at trial.

The defense at trial was intoxication. To rebut the defense, the prosecution elicited testimony from two police officers that they had seen defendant in an intoxicated condition on a previous occasion, when he was under arrest for drunk driving. It was their opinion that, on the evening in question, defendant was not intoxicated—although he had been drinking. A third officer volunteered, in explanation for his actions upon arriving at defendant's residence, that he had responded to similar calls to the house before, so that he was acquainted with the layout of the house and with defendant. The details of the prior occasions were pursued by defense counsel on cross-examination, and there was no objection to any of the testimony relating to defendant's prior conduct.

Defendant predicates reversible error on the trial court's refusal to suppress as evidence the rifle and spent cartridges, and on the basis of the testimony of the police officers relating to prior intoxication. A third issue regarding the jury instruction on voluntary intoxication as it relates to specific intent is controlled by our opinion in *People v Rich,* 397 Mich 399; 245 NW2d 24 (1976), defendant having been tried previous to the decisional date of *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973).

## I. The Warrantless Entry

In ruling pretrial on the motion to suppress, the trial judge realized that the crucial question was the officers' state of mind at the time of the warrantless entry. The validity of that entry depends upon the reasonableness of their response to the situation as perceived by them. The question is whether a reasonable person would have perceived a need to immediately secure the house and missing weapon in order to insure the safety of those outside. In *Warden, Maryland Penitentiary v Hayden,* 387 US 294, 298; 87 S Ct 1642; 18 L Ed 2d 782 (1967), the United States Supreme Court ruled that under the circumstances of that case the warrantless entry and search of a private residence was a proper response to the exigencies of the situation:

"The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

Defendant's motion to suppress was based on the examination transcript. However, the testimony at the preliminary examination had focused on the facts surrounding the assault rather than the

entry. Sergeant Hancock, who had ordered the entry, was not questioned during the examination as to his reasons. Officer Ross, who had been the first to enter and who had seized the rifle and cartridges, was not cross-examined. The M-1 rifle was admitted into evidence without objection. With this state of the examination record, it was within the trial court's sound discretion to allow renewal at trial of the motion to suppress. *Cf. People v Ferguson,* 376 Mich 90; 135 NW2d 357 (1965). *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).

It is against the facts as more fully developed at trial that we shall review the propriety of the denial of defendant's motion. At the moment that defendant emerged from the house carrying a shotgun and uttering threats, the officers present were aware of three things: they had been shot at twice from the inside and narrowly missed; there were at least two individuals inside when the shots were fired; at least one weapon remained unaccounted for. The record does not support the allegation that the officers knew prior to entry that no one was inside. Their response was therefore reasonable given the existing confusion and emergency nature of the circumstances. The case closely parallels the facts of *Hopkins v Alabama,* 524 F2d 473, 475 (CA 5 1975), wherein the Court reasoned:

"Hopkins argues that the gun seized during the warrantless search of the house is the fruit of an illegal search and should not have been admitted into evidence. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), clearly limits searches incident to lawful arrest to areas within the immediate control of the arrested person. *Chimel* found unconstitutional a search which extended beyond the room in which the

arrest took place. *Vale v Louisiana,* 399 US 30; 90 S Ct 1969; 26 L Ed 2d 409 (1970), holds unconstitutional the search of a house as incident to a lawful arrest which occurred outside the house. Both of these cases, however, are distinguishable from the facts presented here. *Vale* involved a search for narcotics and *Chimel* for evidence relating to the burglary of a coin shop. Neither case presented the exigent circumstances and fact setting shown in this case. While Hopkins was arrested outside the house his presence there was the direct result of tear gas fired into the house to dislodge the shooter or shooters who were firing on the surrounding officers. The search of the house was made immediately after Hopkins was driven out and arrested. Since the gun had not been found before the search, the officers could have reasonably feared that the weapon and its user still remained in the house. The immediate need to ensure that no one remained in the house preparing to fire the yet unfound weapon obviously justified this warrantless search."

We hold that the M-1 rifle and the spent cartridge seized from the floor of the bedroom were admissible as evidence. We do not decide whether the cartridge taken from the toy box should have been suppressed. On this record, if there was error in its admission, it was harmless beyond a reasonable doubt.

## II. Testimony of Prior Intoxication

This Court has recently and unanimously reaffirmed that, except under very unusual circumstances, it will not reverse on the basis of erroneous introduction of testimony where there was neither timely objection nor request at trial for curative instruction. *People v Moss,* 397 Mich 69; 245 NW2d 389 (1976). The testimony regarding defendant's prior intoxication and contacts with the police entered without objection. Not only

were curative instructions not requested, but the details of the matter were actively pursued by defense counsel. It would not be unfair to infer that counsel's decision in this regard was tactical. The defense was intoxication, and the testimony allowed the jury to glimpse a history of drinking problems. In any event, it does not appear that admission of the testimony resulted in a miscarriage of justice. MCLA 769.26; MSA 28.1096. See *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

Affirmed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, LINDEMER, and RYAN, JJ., concurred with FITZGERALD, J.