PEOPLE v LITTLE

1. SEARCHES AND SEIZURES—EXIGENT CIRCUMSTANCES—SEARCH WITH-
   OUT WARRANT—OFFICER'S STATE OF MIND.

   There is no single factor to be looked for in determining whether
   exigent circumstances exist in a particular case to justify an
   entry of a defendant's home and a search of the premises
   without a warrant; each case must be judged on its own facts
   and the circumstances must be considered in terms of the
   police officers' state of mind at the time of the search, taking
   into account the total picture that the facts create.

2. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—EXIGENT
   CIRCUMSTANCES—TOTALITY OF CIRCUMSTANCES—PROBABLE
   CAUSE—PLAIN VIEW.

   Exigent circumstances existed making it reasonable for police
   officers to enter a defendant's home without a warrant, despite
   the fact that the defendant had been arrested outside his home,
   where the totality of the circumstances provided probable cause
   for the police to believe that two other suspects were in the
   defendant's trailer, and in order to insure the arrest of these
   fleeing felons it was reasonable for the police to have proceeded
   without a warrant; once legally inside the defendant's home
   the seizure of stolen goods which were in plain view was legal
   and the items admissible as evidence against the defendant.

3. JUDGES—JUDGE'S CONCLUSION—ARGUMENT OF COUNSEL—ADDI-
   TIONAL EVIDENCE.

   A judge may be persuaded to change his or her conclusion
   following legal argument by counsel, and it is not necessary
   that the legal arguments be accompanied with additional evi-
   dence.

Appeal from Macomb, Robert J. Chrzanowski, J.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures § 44.
[2] 68 Am Jur 2d, Searches and Seizures § 88.
Search and seizure: observation of objects in "plain view"—Su-
preme Court cases. 29 L Ed 2d 1067.
[3] 46 Am Jur 2d, Judgments § 1 et seq.

Submitted June 10, 1977, at Detroit. (Docket No. 30468.) Decided September 7, 1977.

Ben C. Little was convicted of breaking and entering an occupied dwelling with intent to commit larceny therein. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Alice F. Sage,* Assistant Prosecuting Attorney, for the people.

*Butler, Martin & Ellenstein, P. C.* (by *Joseph R. Kosmala),* for defendant on appeal.

Before: J. H. Gillis, P. J., and Bronson and R. E. Robinson,* JJ.

J. H. Gillis, P. J. Defendant was convicted on March 21, 1975, by a jury, of the crime of breaking and entering an occupied dwelling with intent to commit larceny therein. MCLA 750.110; MSA 28.305. He was sentenced to serve 4-1/2 to 15 years in prison. On October 29, 1976, this Court granted defendant's application for delayed appeal.

The charge against defendant arose from the theft of a television and other items from a house trailer occupied by Mr. Frank Yules.

On September 23, 1974, Ms. Viola Stoddard heard the gate to her yard open shortly after she had retired to bed.[1] She got out of bed and ran

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Ms. Stoddard testified that the police arrived shortly after 11:45 p.m. We estimate that she heard the noise at approximately 11:30 p.m.

outside. The dog barked. She came back into her trailer home and looked out of the window to observe defendant and two other men running. They stopped under a "spotlight". Defendant was holding a television set. Ms. Stoddard had seen defendant in the neighborhood before that night. She saw defendant place the television down and then pick it up and proceed around the corner while the other two men went back in the direction from which they had come.

Ms. Stoddard then woke up her husband to watch while she called the police. When she returned to the window the other two men were carrying food and clothing down the street. Mr. Stoddard yelled at the two men, at which time they ran in the same direction that defendant had previously gone, leaving a trail of food and clothes behind them.

The police arrived within minutes. Ms. Stoddard pointed out the car and trailer that she thought to be the subject of the theft. The police checked the car finding it to be undisturbed. They then found that the door to the trailer was open and there were clothes scattered about the street. The officers entered the trailer and found Mr. Yules asleep. They woke up Mr. Yules. He identified the items in the street as his and listed other items missing from his home.

Ms. Stoddard gave a description of the three men to the officers. From prior contacts one of the officers suspected that defendant may have been involved in the burglary. The officers radioed for another police car and continued their interview of Mr. Yules and the Stoddards. Shortly thereafter the officers of the second police car radioed back to the first car that they were talking to defendant

outside of his trailer.[2] Ms. Stoddard was driven to defendant's trailer where she identified defendant as the one who was carrying the television.

After Ms. Stoddard was returned to her home defendant was placed under arrest. When asked if anyone was inside the trailer, defendant responded in the negative; however, when two of the officers knocked on the front door they could hear noises inside. They returned to defendant, who was being held by the other two officers, and received a key to the trailer from him. After entering defendant's trailer the officers found Lewis Shulte and John Galvin in a bedroom and Mr. Yules' television set in the shower.

At the close of the people's case, defense counsel made a motion to suppress the television set. The trial judge stated that the motion was untimely and that nothing could be done because the jury had already seen the evidence. The trial judge made an additional comment to the effect that "the entry into the house was improper". He then called a recess. When court resumed, oral arguments were presented regarding the suppression motion. The trial judge then denied defendant's motion.

Defendant claims that the trial judge erred in denying his motion to suppress the television and that he was denied a fair trial because the trial judge reversed himself on his legal conclusion regarding the entry into defendant's trailer without hearing further evidence.

The trial judge ruled on the motion, so we will review it without regard to the question of untimeliness. See *People v Blassingame,* 59 Mich App 327; 229 NW2d 438 (1975).

[2] Shortly after the second car had driven into the trailer park, defendant had approached the vehicle after exiting his trailer.

The undisputed testimony at trial established that the bathroom is visible from the bedroom and that the officers did see the television in the shower while in the bedroom where they found Shulte and Galvin. Assuming that the entry into the trailer was legal, the seizure of the television was also legal as being within "plain view".[3] See *Coolidge v New Hampshire*, 403 US 443, 465–472; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

There is no dispute that the entry into defendant's trailer was without consent. Therefore, the securing of the key is of little relevance other than the fact that it was the means by which the officers gained access to the trailer. The question is whether the police were justified in making a warrantless entry into defendant's trailer. Defendant claims that there was ample time to get a warrant and that defendant was already under arrest, and therefore the people had failed to show exigent circumstances necessitating the entry. The prosecution argues that the officers were in "hot pursuit" of suspected felons which justified their entry into the premises without a warrant. *Warden v Hayden*, 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

*Warden v Hayden* is not entirely on point. In *Hayden* two cab drivers had followed the defendant after he had committed an armed robbery of the cab company. They observed him enter a house and reported the address to the police. The police arrived within five minutes and found the defendant inside. The United States Supreme Court held that the entry by the police and subse-

---

[3] Defendant does not dispute the visibility of the television. One officer stated that it was partially covered by the shower curtain. The other officer stated that it was visible from the bedroom and made no comment regarding the curtain. In any event, there is no contention that the television was not at least partially visible from the bedroom.

quent search for the defendant without a warrant was justified because a delay to obtain a warrant could be dangerous to the police or others and the circumstances of the case made imperative that particular course of action. The distinction between *Hayden* and the instant case is that in *Hayden* the police had been informed of the exact house into which the defendant had fled, while in the present case Ms. Stoddard did not know where the men had run. The question now becomes twofold: Were there exigent circumstances to justify the warrantless entry into defendant's trailer and if so, did the police have probable cause to believe that the suspects were inside defendant's trailer?

We are unable to determine from the record the exact lapse of time which occurred from the time that Ms. Stoddard observed the three men until the time of the entry into defendant's trailer. From Ms. Stoddard's testimony, we estimate that the first police car arrived at approximately 11:45 p.m. One of the officers of the second car stated that he and his partner were informed at around midnight of a breaking and entering in progress at the trailer park and while enroute to the location, they received the radio run from the first car.[4] He further testified that shortly after arriving at the trailer park defendant approached their vehicle from his trailer, at which time they held him because he fit the description of one of the men. From these facts and the facts previously presented, we estimate the time lapse to be about one hour.

Ms. Stoddard had telephoned her suspicions immediately to the police, and they reacted swiftly. The police had pinned down the name of one of

---

[4] The officers began their shift at midnight and were informed of the breaking and entering during roll call.

the suspects, *i.e.,* defendant. Under the facts in this case, had defendant remained in his trailer and had the police proceeded to his trailer to find him, we find ample support for determining that exigent circumstances existed justifying a warrantless entry for the purpose of apprehending defendant. *United States v Holland,* 511 F2d 38 (CA 6, 1975), *cert den,* 421 US 1001; 95 S Ct 2401; 44 L Ed 2d 669 (1975), *Dorman v United States,* 140 US App DC 313; 435 F2d 385 (1970), *State v Basden,* 8 NC App 401; 174 SE2d 613 (1970).

Defendant argues that because the police had already apprehended defendant, the only suspect who had been positively identified, that the subsequent entry into the trailer was illegal. Defendant relies on *Vale v Louisiana,* 399 US 30; 90 S Ct 1969; 26 L Ed 2d 409 (1970). In *Vale,* the police had the defendant in custody outside of his house and were satisfied that no one was present in the house when they first entered. The sole reason for proceeding into the house was to search for contraband. In the present case, had all three suspects been apprehended outside, *Vale* would control, and we would reverse.

However, defendant was the only suspect found outside. Ms. Stoddard had seen three individuals carrying items. She saw the two others proceed in the same direction that defendant had gone. Defendant had told the officers that no one was in his trailer. The officers heard scuffling noises inside of the trailer and yet no one had answered their knocks. All of the above events occurred within one hour. In consideration of these facts, did the officers have probable cause to believe that the two remaining suspects were present inside the trailer?

In *People v Olajos,* 397 Mich 629; 246 NW2d 828

(1976), our Supreme Court found that a warrantless entry was justified even though the defendant was in custody outside the house. In *Olajos,* police proceeded to the defendant's home after receiving calls reporting a domestic disturbance at that location. Upon arriving, three officers observed several people inside of the house, including the defendant and another adult male. Some of the individuals exited the house upon request. The defendant and the other male did not leave. The other male was observed pointing out the window. Two rifle shots were then fired. The other male left the house; however, only one officer had observed him leave. The defendant then exited carrying a shotgun. He was disarmed and placed under arrest. The officers then searched the house finding a rifle and two spent cartridges. In determining that the entry was justified, the Court focused on "the officers' state of mind" and stated that "[t]he validity of that entry depends upon the reasonableness of their response to the situation as perceived by them". *People v Olajos, supra,* at 634. The Court then held that the officers' response was "reasonable given the existing confusion and emergency nature of the circumstances". *People v Olajos, supra,* at 635.

In *United States v Scott,* 520 F2d 697 (CA 9, 1975), *cert den,* 423 US 1056; 96 S Ct 788; 46 L Ed 2d 645 (1976), four armed bank robbery suspects had fled the scene of the crime and switched cars. Rapid investigation and interviewing of citizens led police to a multi-unit apartment building into which the suspects could have possibly fled.[5] The authorities gained entrance by one means or another to all of the apartments that were said by

---

[5] The police had found the car that could have been used after the switch in the parking lot to the apartment building.

the manager to be occupied by black males except one. When the police knocked on the door to the last apartment noises were heard inside, but no one answered the door. The police entered and found the defendants. As in the instant case, no one had seen the suspects enter the apartment. The Court found that there was probable cause to enter and search for the suspects because it was reasonable to believe that one of the apartments was being used as a hiding place and the other apartments had been eliminated. See also *Nilson v State,* 272 Md 179; 321 A2d 301 (1974).

In *State v Cook,* 26 Ariz App 198; 547 P2d 50 (1976), *review granted,* May 18, 1976, the victim had escaped from the defendant and telephoned the police. When the police arrived she was in her car. She told the police "that she had just been kidnapped", 26 Ariz App at 200, and that the man responsible had tried to rape her in "apartment C" of a building that she pointed out. She further stated that the last time she saw him, soon after she escaped, he had been running toward that apartment building. The police went to the apartment and entered finding no one; however, evidence was seized and admitted at trial. The entry and seizure were held to be reasonable.

As is evident from the brief summaries of the above cases there is no single factor to be looked for in determining whether exigent circumstances exist in a particular case to justify a warrantless entry and search. It is not necessary that weapons be involved or that the police hear noises inside. *State v Cook, supra, Dunston v United States,* 315 A2d 563 (DC App, 1974). The suspect does not have to be seen entering a particular location, *United States v Holland, supra, State v Cook, supra, United States v Scott, supra,* nor does the building

have to be the suspect's residence even if he or she
is not seen entering, *United States v Scott, supra.*
It does not matter if the door is answered or
unanswered. In *United States v Holland, supra,*
*Nilson v State, supra,* and *Dunston v United*
*States, supra,* the door was answered by one say-
ing that the suspect was not there or did not live
there.

Each case must be judged on its own facts and
the circumstances must be considered in terms of
the officers' state of mind at the time of the entry,
taking into account the total picture that the facts
create. *United States v Holland, supra,* at 43–46,
*People v Olajos, supra.*

We find that in this case the officers acted
reasonably in proceeding without a warrant. Con-
sidering the totality of the situation we hold that
the police had probable cause to believe that the
two remaining suspects were in defendant's
trailer. In order to insure the arrest of these
fleeing felons it was reasonable for the police to
have proceeded without a warrant, and we there-
fore determine that exigent circumstances existed
in this case.[6]

As to defendant's second claim of error, the trial
judge made his ruling on the suppression motion
after hearing legal argument by both attorneys

---

[6] Compare *Dent v State,* 33 Md App 547; 365 A2d 57 (1976). In
*Dent,* the police had received a lead identifying the defendant as one
of the perpetrators of an armed robbery. Some 30 hours after the
robbery, the police arrived at the defendant's address and arrested
him in the backyard. In response to noises the police entered the
defendant's apartment and seized a television. They did not find the
other robber. The Maryland Court of Appeals rejected the people's
argument of "hot pursuit" reasoning that the defendant had been
apprehended and there were no facts showing that the other partici-
pant was likely to be hiding in the defendant's apartment. We
distinguish the instant case on the basis of the time factor, the
continuous nature of the investigation, the fact that the officers
knocked and no one answered, yet there were noises, and the fact
that all three men had run in the same direction.

just as this panel has done in this case. Defendant has pointed to no authority that mandates the accompaniment of additional evidence with legal argument. The fact that a judge can be persuaded to change his or her conclusion following legal argument by counsel is the foundation upon which our adversary system is based. The trial judge was correct in denying defendant's suppression motion and we accordingly affirm that decision.

Affirmed.