PEOPLE v CARTWRIGHT

Docket No. 106502. Decided June 3, 1997. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for further proceedings.

Kimberly Ann Cartwright was charged in the 76th District Court with manufacturing marijuana, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. The court, Scott Newcombe, J., bound the defendant over on all counts, finding that, although a deputy's entry into the defendant's residence without a warrant could not be justified as a protective search, the seized evidence was admissible under the doctrine of inevitable discovery. The Isabella Circuit Court, Paul H. Chamberlain, J., ruled that the seized evidence was not admissible, dismissed the charges of felony-firearm and of being a felon in possession of a firearm, and ordered the defendant to stand trial only on the charge of manufacturing marijuana. The Court of Appeals, MacKenzie and R. L. Tahvonen, JJ. (Hoekstra, P.J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 183631). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice Mallett, and Justices Brickley, Boyle, Riley, and Weaver, the Supreme Court held:

The evidence seized should not have been suppressed.

The validity of an entry for a protective search without a warrant depends on the reasonableness of the response, as perceived by the police. In this case, the governmental interest in ensuring that the investigating officers were not at risk outweighed the minimal intrusion that occurred. The brief entry into the residence was not a full search, but rather a cursory inspection of areas where a person presenting a danger to officers might be found. It lasted no longer than necessary to dispel the reasonable suspicion of danger.

Reversed and remanded.

Justice Cavanagh, dissenting, stated that the search was not justified, the evidence inside the mobile home should be suppressed, and the related charges dismissed. Nor might the search be justi-

fied under the inevitable discovery doctrine because the police were not pursuing an alternate line of investigation before the entry into defendant's mobile home.

Justice KELLY took no part in the decision of this case.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Larry J. Burdick*, Prosecuting Attorney, and *Mark Duthie*, Chief Assistant Prosecuting Attorney, for the people.

*Dwight D. Carpenter* for the defendant.

PER CURIAM. The question presented is whether marijuana and firearms seized from the defendant's mobile home should be suppressed because a police officer made a brief and cursory inspection of the residence before the arrival of a search warrant. We hold that the evidence should not have been suppressed, and thus reverse the judgments of the Court of Appeals and the circuit court.

I

On August 31, 1994, officers from the Bay Area Narcotics Enforcement Team (BAYANET) and the Michigan National Guard were using a helicopter and a ground crew to conduct a routine drug investigation. Detective Dennis McMahon[1] was acting as "spotter" during this phase of Operation HEMP.

Shortly before 6:00 P.M., while flying over property near Blanchard in Rolland Township, Isabella County, Detective McMahon saw numerous groups of tall plants that he identified as marijuana. They were near a mobile home and a shed. There also was a tractor and several other vehicles at the site.

---

[1] Two alternative spellings of this officer's surname appear in the record, "McMahan" and "McMann."

As the helicopter crew watched, a pickup truck pulling a small boat entered the long driveway. The driver, later identified as Randy Cartwright, gestured for the aircraft to go away. When it did not, but instead dropped lower, he made an obscene gesture and then ran inside the residence. A short while later, he emerged with the defendant and several children. After Mr. Cartwright unhooked the boat from the pickup, the defendant and the children got in the vehicle and drove away. Mr. Cartwright then reentered the home.

The helicopter tried to stop the departing truck, but the defendant maneuvered the vehicle through a grassy area and escaped. She was arrested later.

Meantime, Detective McMahon saw Mr. Cartwright climbing out a window of the mobile home. He climbed back in, upon seeing the helicopter, but then left the residence through the back door. Mr. Cartwright ran through a field behind the mobile home, carrying a large object wrapped in a dark coat or blanket, and disappeared into a woods. He still had not been apprehended at the time of the proceedings in this case.

The ground officers converged on the residence at this point. Deputy Gary Theunick was one of the first to arrive. While two other officers went to the area behind the mobile home, Deputy Theunick entered the residence to make certain that no one else was on the premises. He was inside for thirty to forty-five seconds. Although he saw marijuana and firearms, he did not confiscate anything.

Deputy Theunick testified that after reporting his observations to his supervisor, he checked the shed by looking through an open window. He saw numer-

ous marijuana plants inside, but no person. He did not enter the building, but again informed his superior of what he had seen.

Partly on the basis of Deputy Theunick's observations, police obtained a search warrant, which they executed about 8:00 P.M., two hours after they had spotted marijuana from the helicopter. In addition to the approximately seventy marijuana plants that were growing outside the residence, officers found twenty-nine plants in the shed and numerous others stashed behind a stereo inside the mobile home. There were several firearms in a gun cabinet in the master bedroom of the residence, a bowl of marijuana buds setting next to the gun cabinet, and drying marijuana.

The defendant was charged with manufacturing marijuana,[2] possession of a firearm during the commission of a felony,[3] and being a felon in possession of a firearm.[4] She also was charged as an habitual (second-felony) offender.[5]

At the conclusion of the defendant's preliminary examination, the district court agreed with defense counsel that Deputy Theunick's entry into the mobile home could not be justified as a protective search. The court concurred with the prosecutor, however, that the seized evidence was admissible under the doctrine of inevitable discovery. The defendant was bound over for trial on all counts.

In the circuit court, the defendant renewed her challenge to Deputy Theunick's entry without a warrant. The circuit court upheld the district court's find-

---

[2] MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c).

[3] MCL 750.227b; MSA 28.424(2).

[4] MCL 750.224f; MSA 28.421(6).

[5] MCL 769.10; MSA 28.1082.

ing that the deputy's action was not legally justified.
The circuit court ruled further that the marijuana and
weapons seized from the mobile home were not
admissible under the doctrine of inevitable discovery.
The court thus dismissed the charges of felony-
firearm and being a felon in possession of a firearm.
The defendant was ordered to stand trial only on the
charge of manufacturing marijuana.

The prosecutor appealed to the Court of Appeals.
That Court granted leave and, in an unpublished opin-
ion per curiam, affirmed the suppression ruling, two
to one.[6]

The prosecutor has appealed the suppression deci-
sion to this Court.

II

While conceding that Deputy Theunick's entry into
the mobile home might have been good police prac-
tice, the district court held that, nonetheless, it was
not a proper search without a warrant. The circuit
court ruled that the district court did not abuse its
discretion in this regard:

> There are portions of the testimony that need to be rec-
> onciled for one to conclude either way on the issue of
> whether or not the search is proper; the search, that is,
> prior to obtaining the search warrant. The District Judge
> heard the testimony, was able to observe the demeanor of
> the witnesses and reconciled the testimony. I'm not going to
> put myself in the place of the examining magistrate or Dis-
> trict Judge and second guess him. I must determine
> whether or not there was an abuse of discretion, and I find
> none.

---

[6] Issued May 21, 1996 (Docket No. 183631).

The Court of Appeals majority affirmed, rejecting the prosecutor's argument that Deputy Theunick's entry into the mobile home was reasonable under the exigent circumstances exception to the Fourth Amendment warrant requirement. Concern over the safety of the investigating officers, alone, did not provide the necessary circumstance, the majority said.

The majority explained that under the exigent circumstances exception, police may not enter a dwelling absent probable cause to believe that a crime recently was committed on the premises, or that they will find evidence or the persons who committed the suspected crime. *People v Davis*, 442 Mich 1, 24; 497 NW2d 910 (1993). There also must be objective facts that demonstrate the need for immediate action either to prevent the imminent destruction of evidence, to protect the officers or other persons, or to prevent the escape of a suspect. *People v Blasius*, 435 Mich 573, 593-594; 459 NW2d 906 (1990).

The majority observed that in the instant case, although the prosecution introduced evidence pertaining to the need to protect the investigating police officers, the district court apparently found this evidence to lack veracity. An appellate court will defer to the trial court's resolution of factual issues, especially where it involves the credibility of witnesses. *People v Crowell*, 186 Mich App 505, 507-508; 465 NW2d 10 (1990), remanded 437 Mich 1004 (1991).

The majority found the cases relied on by the prosecutor to be distinguishable, e.g., *Warden, Maryland Penitentiary v Hayden*, 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967), and *Maryland v Buie*, 494 US 325, 334-336; 110 S Ct 1093; 108 L Ed 2d 276 (1990). The police in *Hayden* were responding to a report

that a suspect was in the house. In *Buie*, the protective sweep was incident to an arrest. In the instant case, however, the majority noted that the police had no reason to believe that an additional suspect was in the mobile home. Moreover, there were no time constraints to consider should a suspect later have been determined to be hiding in the residence.

The dissent believed that the district court clearly erred in finding that Deputy Theunick's protective search was unconstitutional. In addition to the facts recited by the majority, the dissent focused on Mr. Cartwright's arrival during the helicopter surveillance, his obscene hand gesture, and the fact that the defendant drove off a short time later with several children, evading the helicopter's attempts to stop her vehicle.

The dissent also emphasized that the officers on the ground had been alerted by the helicopter crew as they approached the mobile home that Mr. Cartwright had fled into the woods behind the residence with what could be a long gun. Deputy Theunick conducted a protective search of the dwelling while other officers pursued Mr. Cartwright. The dissent believed it critical that this entire episode resulted from a random fly-over, and that police had no information about the nature of the drug operation on the defendant's property or the number of persons involved.

It noted that the district court seemed to base its decision on the clearly erroneous premise that a protective search is not permissible on constitutional grounds. In so doing, the court failed to make a definitive factual finding that the protective search in *this* case was not necessary. Under *Buie*, police have authority to conduct a protective search if they rea-

sonably believe that the area in question harbors an individual who poses a danger to them or to others. Such a search is quick and limited, and conducted for the sole purpose of ensuring the safety of police officers and other persons.

The dissent further noted that here officers were pursuing Mr. Cartwright, whom they had probable cause to arrest. He had just left the mobile home, and there was reason to believe he had a gun. The area was remote, and officers had no prior knowledge of the extent and nature of the criminal enterprise they had uncovered. Nor did they have specific knowledge concerning the number of individuals involved. The one person they did see, Mr. Cartwright, was hostile, evasive, and likely armed. It was on the basis of these circumstances that Deputy Theunick carried out a protective search of the mobile home.

The dissent emphasized that the touchstone of Fourth Amendment analysis always is the reasonableness of the governmental invasion of a citizen's personal security, considering all the circumstances. The protective search was brief and confined to looking for individuals who may have been in the residence. It was conducted incident to an attempt to arrest Mr. Cartwright. The fact that he escaped and was not actually arrested does not affect the reasonableness of the search.

III

The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures. US Const,

Am IV.[7] The remedy for a violation is suppression of the unlawfully obtained evidence. *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914).[8]

One of the exceptions to the Fourth Amendment warrant requirement is the so-called "exigent circumstances" exception. *People v Davis, supra* at 10, and *People v Toohey*, 438 Mich 265, 271, n 4; 475 NW2d 16 (1991). This exception still requires reasonableness and probable cause, however. *In re Forfeiture of $176,598*, 443 Mich 261, 266; 505 NW2d 201 (1993).

In *Blasius, supra,* this Court noted that the specific exigencies that justify entries without warrants have been gradually defined by the United States Supreme Court over a forty-five-year period. In *Minnesota v Olson*, 495 US 91; 110 S Ct 1684; 109 L Ed 2d 85 (1990), the Court listed several circumstances that had been cited by the Minnesota Supreme Court as justifying entry of a residence without a warrant, i.e., the hot pursuit of a fleeing felon, to prevent the imminent destruction of evidence, to preclude a suspect's escape, and where there is a risk of danger to police or others inside or outside a dwelling. The Minnesota court also said that, in the absence of hot pursuit, there must be probable cause to believe that at least one of the other three circumstances exists, and that the gravity of the crime and the likelihood that a suspect is armed should be considered. The United

---

[7] The Fourth Amendment was made applicable to the states through the Fourteenth Amendment. *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

[8] The Michigan Constitution also guarantees against unreasonable searches and seizures. Const 1963, art 1, § 11. However, the Michigan Constitution does not provide more protection than the Fourth Amendment under the circumstances of this case. *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993).

States Supreme Court said that the Minnesota court had applied essentially the correct standards in determining whether exigent circumstances existed.

This Court explained the exigent-circumstances exception this way in *In re Forfeiture of $176,598*:

> Pursuant to the exigent circumstances exception, we hold that the police may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime. The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. If the police discover evidence of a crime following the entry without a warrant, that evidence may be admissible. [443 Mich 271.]

IV

We agree with the dissenting judge in the Court of Appeals that Deputy Theunick's entry and protective search of the mobile home was not unreasonable, and thus did not violate the Fourth Amendment. As this Court stated in *People v Olajos*, 397 Mich 629, 634; 246 NW2d 828 (1976), the validity of an entry for a protective search without a warrant depends on the reasonableness of the response, *as perceived by police.*

In the instant case, police were conducting a random fly-over drug investigation when a member of the helicopter crew spotted dozens of tall marijuana plants near a mobile home and shed. As the crew watched, a man later identified as Randy Cartwright arrived in a pickup and motioned for the helicopter to

leave. He then made an obscene gesture toward the aircraft and ran into the dwelling. A short time later, the defendant and several children came outside and drove away in the truck, ignoring the efforts of the helicopter crew to prevent her from leaving.

Nearly coincident with the arrival of the ground crew, Mr. Cartwright ran out the back door of the mobile home and headed into the woods with a large object wrapped in a dark coat or blanket. It appeared to the helicopter crew that the object might be a gun, perhaps as long as three feet.

A member of the ground crew, Deputy Theunick, was alone in his vehicle. As he approached the residence, he was informed by radio that a man had run from the mobile home into the woods with an object that could be a weapon. While two other ground crew officers rushed to the back of the dwelling in an attempt to locate the suspect, Deputy Theunick entered the mobile home. He explained that he considered this to be a hostile setting, and that he wanted to conduct a protective search. He used the front door, and identified himself as a police officer. He was inside for no more than forty-five seconds. As soon as he determined that no one was there, he left. He had observed weapons and marijuana in the dwelling, but did not confiscate anything.

On cross-examination, Deputy Theunick said it would have been tactically unsound to simply watch the doors of the residence while waiting for a search warrant.[9] Officers did not know how many individuals were involved, they were in a rural setting with little

---

[9] The record indicates that the mobile home was twelve by sixty feet, with a front addition of approximately the same size.

cover, and they had been told that a man had run into the woods from the mobile home with what could be a long gun.

Deputy Theunick's supervisor, Lieutenant Robert Thomas, agreed that watching the house for an extended period of time would have left officers vulnerable to a sniper attack. He explained on cross-examination that although there were a lot of trees on the property, "it's open pretty much in the front and rear. . . . [I]f a person was so inclined to be in there and try to snipe somebody, they could have done it real easy."

Detective McMahon confirmed on cross-examination that he had radioed the helicopter pilot that there might be more suspects inside the mobile home, and that the ground officers should be careful. When asked why it was necessary to enter the residence if the doors could be secured, Detective McMahon responded, "you're a sitting duck, sir, if you don't," and noted that there also could have been someone in the shed.

We reject defense counsel's suggestion to Detective McMahon that Deputy Theunick's action was unreasonable because officers could have protected themselves in other ways until they could get a search warrant, e.g., by hiding behind the shed, in the woods, or behind the tractors. Although the burden always is on the government to establish an exception to the warrant requirement, the standard is probable cause, not proof positive.

In this case, the governmental interest in ensuring that the investigating officers were not at risk outweighed the minimal intrusion that occurred. The brief entry into the mobile home was not a full

search, but rather a cursory inspection of areas where a person presenting a danger to officers might be found. It lasted no longer than necessary "to dispel the reasonable suspicion of danger . . . ." *Buie*, *supra* at 326. Although *Buie* involved a search incident to arrest, the rationale for allowing a protective search is the same.

V

It is not clear to us whether the district court found the protective search in this case to be unjustified by a need to protect the officers, or whether the court erroneously believed that a protective search is unconstitutional per se. In either event, the district court was incorrect, and the circuit court and Court of Appeals erred in affirming that decision.

Because of our ruling that Deputy Theunick's entry into the mobile home was proper under the exigent-circumstances exception to the warrant requirement, we need not decide whether the evidence in question was admissible under the doctrine of inevitable discovery.

For the reasons given, we reverse the judgments, below, to the extent that they resulted in the dismissal of the charges of felony-firearm and being a felon in possession of a firearm. This matter is remanded to the circuit court for further proceedings consistent with this opinion. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, BOYLE, RILEY, and WEAVER, JJ., concurred.

CAVANAGH, J. (*dissenting*). I cannot agree that the search was justified on the basis of the exigent circumstances exception to the warrant requirement.

This is consistent with the conclusion of the district judge, who had the opportunity to assess the credibility of the police witnesses, that the protective search was unconstitutional. Upon further review, the circuit judge held that the district judge did not abuse his discretion in finding that the search without a warrant was not legally justified. The Court of Appeals affirmed in a two-to-one unpublished per curiam opinion. My colleagues, however, upon this application by the prosecutor, wish to reverse those determinations by the lower courts and, so, substitute their view of the facts rather than defer to the discretion of the trial court, which, in my view, can hardly be said to have been abused.

As noted by the Court of Appeals, the police did not have any reason to believe that an additional suspect was located within defendant's mobile home, nor did they have time constraint considerations if a suspect was later determined to be hiding inside. *People v Blasius*, 435 Mich 573; 459 NW2d 906 (1990). Thus, the search was not justified, the evidence inside the mobile home should be suppressed, and the related charges dismissed.

Nor do I believe that the search might be justified under the inevitable discovery doctrine because the police were not pursuing an alternate line of investigation before the entry into defendant's mobile home. *United States v Cherry*, 759 F2d 1196, 1204 (CA 5, 1985).

For these reasons, I would affirm the Court of Appeals.

KELLY, J., took no part in the decision of this case.