ALDER *v.* FLINT CITY COACH LINES, INC.

AUTOMOBILES—WHIPLASH INJURY—NEW TRIAL—EXCESSIVE VERDICT —EQUALLY DIVIDED COURT.

Order granting a new trial in action by plaintiff motorist who sustained a whiplash injury in rear-end collision and then recovered a verdict of $29,000 is affirmed by a court equally divided as to whether trial court had abused his discretion in granting new trial because verdict was excessive.

Appeal from Genesee; Roth (Stephen J.), J. Submitted April 7, 1961. (Docket No. 46, Calendar No. 48,799.) Decided September 21, 1961.

Case by Raleigh Alder against Flint City Coach Lines, Inc., a Michigan corporation, for personal injuries resulting from bus striking rear of automobile. Verdict for plaintiff set aside and new trial granted. Plaintiff appeals. Affirmed by an equally divided court.

*Grimes & Coughlin,* for plaintiff.

*Gault, Davison & Bowers (Matthew Davison, Jr.,* of counsel), for defendant.

SOURIS, J. (*for reversal*). Plaintiff recovered a $29,000 jury verdict in this automobile negligence case, which was set aside and a new trial granted on defendant's motion alleging that the verdict was

REFERENCES FOR POINTS IN HEADNOTES

3 Am Jur, Appeal and Error § 1160.
15 Am Jur, Damages § 211.

against the great weight of the evidence, was grossly excessive, and was arrived at by speculation and conjecture rather than by reference to the evidence and the trial court's charge. In his opinion granting a new trial, the circuit judge held that the amount of the verdict was not within the range of credible evidence, was against the weight of the evidence, and was the prejudicial result of defendant's admission of liability and of the fact that defendant was a public carrier. On plaintiff's application, we granted leave to appeal.

In *Hoskin-Morainville Paper Co.* v. *Bates Valve Bag Corp.*, 268 Mich 443, at 449, Mr. Justice BUSH-NELL reaffirmed our long-standing rule for reviewing orders granting or denying motions for new trial:

"The question of reviewing the discretion of trial courts in granting or refusing new trials is a most delicate one. The rule in this State is that the judge has a wide discretion in either granting or refusing a new trial, either upon his own motion or that of the parties."

See, also, *Detroit Tug & Wrecking Co.* v. *Wayne Circuit Judge,* 75 Mich 360, 372. The rule is meaningful, however, only in the context of the factual circumstances as to which it is sought to be applied. That is to say, we have no single standard by which we measure the exercise of such discretion in all cases where discretionary judicial actions are challenged. For example, a trial judge's grant or denial of a motion for new trial based upon evidence discovered subsequent to trial would be reviewed in the light of the importance of the new evidence to the issues tried, the availability of the evidence prior to trial and other similar standards considered by the trial judge himself in determining the motion. But

such standards clearly have no applicability to a motion for new trial such as is here involved.  Here, the trial judge made his determination initially, and we review his discretionary determination subsequently, in the light of entirely different standards. The standards applicable to this type of case have been variously described over the years: Is the verdict so inadequate or so excessive as to shock the judicial conscience? *Watrous* v. *Conor,* 266 Mich 397; *Sebring* v. *Mamby,* 251 Mich 628.  Is there to be found no basis for the verdict in a sound evaluation of the evidence? *Moyer* v. *Shampo,* 357 Mich 391.  Is the verdict manifestly against the clear or great weight of the evidence? *Aho* v. *Conda,* 347 Mich 450.  And, finally, has the verdict been secured by improper methods, prejudice, or sympathy? *Michaels* v. *Smith,* 240 Mich 671.  Among these are the standards applied to the verdict by the circuit judge, as stated in his opinion, and they are the standards we apply to his decision in this review.

The evidence discloses that in June of 1958 plaintiff's car, while stopped for a traffic signal, was struck in the rear by one of defendant's buses. It was undisputed that plaintiff suffered injuries to his neck in the nature of a "whiplash injury." A medical witness for defendant, Dr. Brasie, testified that 9 months after the collision there was limitation of motion of plaintiff's neck in all directions, that there was "some very, quite definite muscle spasm besides the midline or the bones of the cervical spine in the upper part of the neck area," and that there was "tenderness on pressure over the greater occipital nerve." This witness concluded that plaintiff's condition was then a chronic muscle strain in the upper half of the neck. He testified also that, although in his opinion plaintiff should have been able to continue in his trade as a finish carpenter, it was "entirely possible and probable that he had some dis-

comfiture on motions of the upper portion of the neck as claimed."

The same doctor saw plaintiff again 7 months later, 1 week before trial, at which time he found that wherever he touched plaintiff, "from the neck, right on down to the middle of his spine and then to the end," tenderness was indicated by plaintiff jerking and jumping and saying it hurt. At the time of the second examination he found that the entire musculature of the neck was held spastic. He could not assign a medical reason to such condition in the absence of a severing of the spinal cord. Upon further examination, it was discovered that plaintiff was sensitive to the touch of a medical swab on his left eye and on the inside portion of the white of the right eyeball, but he did not feel any touch of the swab on the outer side of his right eye. Similarly, plaintiff did not react as normally as expected when a cotton swab was used to tickle the back part of his throat. Normally, Dr. Brasie testified, that produces a gag reflex, but in plaintiff there was none; there was no twitching of the musculature and plaintiff said he didn't feel it. The doctor concluded that that type of eye and throat anesthesia, "with no other. indication whatsoever of cervical nerve damage, of cranial nerve damage * * * is a hysterical type of reaction beause it's got to be self-induced."

Although acknowledging that plaintiff's reaction, or failure to react, was not necessarily voluntary, since it might be a type of nervous reaction, Dr. Brasie made it perfectly clear he believed plaintiff was exaggerating the symptoms at the time of the second examination. On cross examination on this point, the following occurred:

"*Q.* These muscle spasms that you mentioned were objective findings, were they not?

"*A.* They are objective in the sense that they are present. The reason—

"*Q.* The muscle actually does contract?

"*A.* Oh, I can contract my muscle any time. So can he.

"*Q.* Can you contract the muscles in your neck at any time?

"*A.* Yes, sir (indicating). Sure. Anyone I got I can contract, almost. I am not as well educated as some of the performers I have seen."

On cross examination relating to his diagnosis of plaintiff's condition as hysterical conversion reaction, defendant's doctor was asked whether that could have resulted from the injury plaintiff received. To that question and all related questions, the witness declined to answer because "I do not feel that other than expressing the possibility both ways that I am qualified on a neuropsychiatric basis to make a determination such as you are asking me to make. I am not qualified to make that"; "Now I am not qualified to sort this out. I am not going to qualify in order to try to tell you in an individual case, because I am not a psychiatrist or psychologist, but you are going into the probabilities, possibilities, and they are that this could be one"; "Now I am not qualified to say. It can be either way. The borderline there is pretty hazy"; "I am not qualified to pass on it."

Against the background of this testimony generally adverse to plaintiff, the jury returned a verdict the size of which clearly indicates it concluded plaintiff was seriously, and perhaps permanently, injured. It also indicates quite positively that the jury placed little or no credence in at least that part of defendant's doctor's testimony suggesting that plaintiff may have been feigning his symptoms at the time of the second examination.

Our review of the testimony given by plaintiff's treating physician and other witnesses convinces us that there is a sound basis for the verdict and that it

is not against the clear weight or great weight of the evidence. The treating physician, Dr. Gorne, saw and treated plaintiff over 100 times from the time of the collision to the date of trial. He testified that plaintiff's injuries were permanent; that depending upon life's stresses and strains, plaintiff will need medication for sedation or pain; that he will require the services of a physician once a month or 3 or 4 times a week, depending upon those stresses and strains; that his total charges for treatment to date of trial were $743; and that plaintiff experienced considerable pain and discomfort from his injury.

Plaintiff worked on a contract basis as a finish carpenter for a builder. The builder testified that it now takes plaintiff longer to do a job than it did before the collision, "three days longer to do the same job he did in a week," thereby decreasing his earnings. He also testified from his records that from January 1, 1958, through June 13, 1958, the date of injury, plaintiff's earnings averaged $193.64 per week, whereas from August, 1958, to the end of October, 1959, just before trial, his average weekly earnings were only $126.47. The builder testified that from his own observations plaintiff has definitely slowed down, that there was more work available for him to do had he been able to do it, that extra men had to be hired to do the same type of finish carpentry plaintiff did, whereas it had never been necessary before, and that another man had to be hired to do ceiling tile work because plaintiff could not bend his neck back as was necessary to do that part of the job.

Plaintiff was 57 years of age at the time of his injury and had a life expectancy from that date of about 7 years. Based upon the builder's testimony of plaintiff's decreased earning capacity and upon Dr. Gorne's testimony that plaintiff's injuries were

permanent, the jury was entitled to conclude that plaintiff's past and future loss of earnings would exceed $24,000. Having been awarded $29,000, the balance of $5,000 would presumably cover plaintiff's automobile damage, medical expenses (past and future), and pain and suffering.

This record does not support the circuit judge's conclusion that the verdict was excessive. Nor can we say from the record before us that it was in any way secured by improper methods, prejudice, or sympathy. The circuit judge's conclusion that the jury was prejudiced against defendant because liability was admitted is not in accordance with the facts disclosed by the court's jury instructions. It appears therefrom that the judge, on plaintiff's motion for directed verdict at the conclusion of proofs, instructed the jury that as a matter of law liability of defendant was established, thereby leaving for its determination only the question of damages, if any. Assuming that the defendant's closing argument (not contained in this record) admitted liability, the circuit judge very carefully protected defendant from any prejudice which could result therefrom and from any prejudice which might result from the fact that defendant was a public carrier by the following protective instructions contained in his excellent charge to the jury:

"Now while in this case I have in effect foreclosed any consideration by you of the question of fault, the matter that the fact that I have foreclosed it does not mean that you should in any way weigh it in your consideration of damages. In other words, you are not to take into account the fact that the fault lay on one side. The question is what damages have been proven to your satisfaction, what you should award. * * *

"Now in discharging your duty in this regard, there are several things you should not consider and

take into account. You should not take into account the question of matter of liability. That's out of the case. We are not concerned about this any more. All we are concerned about is what award for damages should you make.

"Now when you talk about damages, there's some things you will not take into account over and above that. You'll not take into account what money needs Mr. Alder may have. You don't set damages that way. You don't take into account how much money the defendant has, nor do you take into account whether the defendant is making or losing money in its operation in the city of Flint. You take none of these things into account.

· "Here's what you do take into account, what damages has the plaintiff suffered as a result of the negligent action of the driver of the bus, and that's all you take into account. You don't care whether the company can pay it; we are not concerned about that. You don't care whether Mr. Alder needs it. We are not concerned about that. What we are concerned about is what did he suffer; and once you are satisfied on that point by a preponderance of the evidence, you say, 'That's it'. That's your answer.

· "I think both in civil and in criminal cases sometimes jurors either are improperly instructed by the court or else go outside of their proper domain. This is unfortunate because I think we are all here, all of us, to see that a good job is done and that justice is done between the parties."

It is our conclusion that there was no basis for the trial judge's exercise of discretionary powers to grant a new trial, and, hence, if abuse of discretion we need find, we so find.

The order should be reversed and the case remanded for entry of judgment on the verdict of the jury. Costs to plaintiff.

TALBOT SMITH, EDWARDS, and KAVANAGH, JJ., concurred with SOURIS, J.

CARR, J. (*for affirmance*).  In this personal injury case defendant conceded liability.  On the trial before the jury the question at issue related to the matter of damages to be awarded.  A verdict in the sum of $29,000 in plaintiff's favor was returned by the jury, and defendant moved for a new trial on the ground that under the proofs in the case the verdict was grossly excessive and reflected conjecture and speculation on the part of the jury as to the possible and probable results of plaintiff's injury. The trial judge granted the motion, denied plaintiff's motion for reconsideration, and plaintiff, on leave granted, has appealed.

In reaching the conclusion indicated that the verdict should not be permitted to stand, the trial judge said, in part:

"Having spoken of what troubles us generally, let us proceed to the instant problem.  It is significant perhaps, that counsel for plaintiff, in his argument on the motion for a new trial, referred to *Moyer* v. *Shampo,* 357 Mich 391, a case not unlike this one. He relied on it for authority that a jury verdict, and particularly this one, should not be disturbed.  These 2 cases afford a good comparison.  In the *Moyer Case* the verdict was for $1,500, in this case it was for $29,000.  Judging by surface appearances these cases are alike in important respects.  Are we to conclude then that a spread of from one to the other amounts is not inordinate?  This court would not undertake to answer in the affirmative.

"Viewing the evidence in this case, it appears to the court that the amount awarded to the plaintiff was not within the range of credible evidence, and against the weight of the evidence as to the amount. The court, therefore, can only conclude that the verdict must have been the result of the jury being improperly swayed by 2 factors which prejudiced the defendant.  The first, that liability was admitted, and second, that the defendant was a public carrier.

Neither of these should have entered into a determination of the amount of the award. Accordingly a new trial is granted."

This Court has repeatedly held that a trial judge, in passing on a motion for a new trial, is vested with a large discretion. The wisdom of such rule is obvious. The judge has the advantage of seeing the witnesses on the stand, of listening to their testimony, of noting the attitude of the jury to various matters that may arise during the trial, and is in far better position than is an appellate court to pass on questions of possible prejudice, sympathy, and matters generally that occur in the course of a trial but which do not appear of record. In commenting on the discretion of the trial court, it was said in *Graeger* v. *Hager,* 275 Mich 363, 368:

"This court will not interfere unless the abuse of that discretion is palpable. (Citing several prior decisions.)"

Each case of this nature must be determined in the light of the rule above referred to and with due regard to the situation confronting the trial court. The opinion of the circuit judge in the instant matter indicates that he made a "sound evaluation of the evidence." *Moyer* v. *Shampo,* 357 Mich 391, 394. As is not uncommon in actions for damages for personal injuries, testimony was introduced dealing with possibilities and probabilities. Our examination of the record brings us to the conclusion that the trial judge was fully justified in his characterization of the proofs, and in the reference to the existence of possible grounds for sympathy or prejudice. We cannot agree that there was any palpable abuse of discretion in granting the motion.

The principle of practice generally observed in cases of this character should be followed here, and

the order from which the appeal has been taken should be affirmed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

BLACK, J. (*for affirmance*). Plaintiff has failed to persuade that the trial judge's order for new trial constituted an abuse of discretion. The judge was "there." We were not. He knew and knows, better than we may hope to know by reading (distinguished from watching and listening) the adduced medical testimony, whether this case should be retried. We have noted before, on many variant occasions, that a trial judge is in much better position to judge questions like this since our sole means of information is limited to the comparatively inferior worth of printed—no, "dehydrated"*—pages.

"The hesitant word and the averted glance stand on a parity, on the printed page before us, with the positive assertion and the forthright expression. Not so in the mind and conscience of the *nisi prius* judge. He makes his appraisal of truth or falsity upon an evaluation of all the elements visible and audible, and while cases may occur in which his disregard for the clear preponderance is manifest even in these chambers, this case is not one of them." (SMITH, J., writing for the Court in *Hayes Construction Co.* v. *Silverthorn,* 343 Mich 421, 429.)

Aside from the above, and noting that this is a case of conceded liability, one is led to wonder why Judge Roth did not condition his order for new trial on a *remittitur,* thus affording the tortiously injured plaintiff a choice between retrial and acceptance of judgment for an amount less than that reported in his favor by the jury. That may yet be done, on

* See quotation, *In re Calhoun Estate,* 346 Mich 227, 232, 233, from Judge Frank's "Courts on Trial."

affirmance of the appealed order, and I respectfully recommend consideration of such course with view toward possible elimination of the cost and delay both parties must suffer in event of retrial and possible appeal from judgment on retrial.

It is emphasized that this is another case (like *Detzur* v. *B. Stroh Brewing Co.*, 119 Mich 282 [44 LRA 500, 5 Am Neg Rep 371]) where the only question is that of amount of the plaintiff's unliquidated damages. As was said in *Detzur* (pp 288, 289):

"We are also of the opinion that making a new trial dependent upon a refusal to remit a portion of the verdict in cases of this kind is a well-settled practice in this State, where, as in this case, the amount of unliquidated damage is the only question involved. It has always been considered lawful for the trial judge in such a case to set aside a verdict as excessive; and it has been a common practice to grant a portion of the relief asked by requiring a remission of a portion of the verdict as a condition upon which the new trial will be denied. This has always been a matter of discretion, and, where it is not clearly erroneous, the action of the trial court should not be disturbed."

Such is the continuously approved rule of practice in like instances. See *Snook* v. *Mt. Clemens Sugar Co.*, 186 Mich 593; *Rockafellow* v. *Streeter*, 332 Mich 366, and *Von Essen* v. *Vos*, 333 Mich 644. In *Snook*, following *Detzur* directly, the Court supported the suggestion made here in the following language:

"This Court has allowed and approved the action of the trial judges in making the granting of a new trial depend conditionally upon the remitting of a portion of the judgment. *Detzur* v. *B. Stroh Brewing Co.*, 119 Mich 282 (44 LRA 500, 5 Am Neg Rep 371); *North Michigan Land & Live Stock Co.* v. *Kneeland*, 149 Mich 495. The rule as to when this Court will interfere with the action of the trial court in dispos-

ing of motions for new trials was so clearly stated by Justice CARPENTER in *Hintz* v. *Michigan Central R. Co.*, 132 Mich 305, that it is not necessary to restate it here."   (pp 594, 595 of report.)

I vote to affirm.   Costs of the present appeal should abide the final result.