PEOPLE v TALLEY

Docket No. 64037. Decided February 23, 1981. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the Recorder's Court of Detroit for an evidentiary hearing.

Lamont R. Talley was charged with possession of heroin with intent to deliver. At the preliminary examination one of the arresting officers, who was the only witness presented, testified that his patrol car had followed a speeding car in which the defendant was a passenger for several blocks before they pulled it over, and that when the officer approached the defendant's car he saw the defendant drop a brown paper bag and attempt to "kick" it under the seat of the car with his hand. The Recorder's Court of Detroit, Harvey F. Tennen, J., after reading a transcript of the preliminary examination, granted the defendant's pretrial motion to quash the information on the ground that the testimony of the arresting officer was "inherently incredible". The trial court found that the examining magistrate had abused his discretion in not finding the testimony inherently incredible because it was very unlikely that the defendant would wait to hide the paper bag, which contained heroin, until the police officers had reached the car. Therefore, the trial court did not expressly address the defendant's motion to suppress the evidence contained in the paper bag, which the defendant argued was seized without probable cause. The Court of Appeals, R. M. Maher, P.J., and Bronson and A. E. Moore, JJ., affirmed in a memorandum opinion, holding that the evidence seized from the car should have been suppressed because it was seized without probable cause (Docket No. 78-4980). The people apply for leave to appeal. In a per curiam opinion signed by Chief Justice Coleman and Justices Kavanagh, Williams, Fitzgerald, Ryan, and Moody, the Supreme Court held:

1. In this case the trial judge improperly substituted his judgment for that of the examining magistrate. A trial court may reverse the magistrate's decision only if it appears on the

record that there has been an abuse of discretion. Part of the magistrate's duty is to judge the credibility of witnesses. The judge who hears the testimony has the distinct advantage over the appellate judge, who must form judgment solely from the printed words. The standard in testing for an abuse of discretion is a narrow one. Discretion involves the idea of choice made between competing considerations. In order to have an abuse in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

2. The trial judge may have misapprehended the testimony given at the preliminary examination. It is entirely possible that the defendant and his companion who was driving the car did not notice that they were being "paced" by the following patrol car, and were surprised by the order to pull over. In that case, the time the defendant had to decide to hide the bag would be appreciably shorter than if he had noticed the patrol car following his car for several blocks, as the trial court apparently assumed. It cannot be said that the magistrate abused his discretion, as a matter of law, in believing the police officer's testimony.

3. In this case the trial court did not explicitly decide whether the evidence should be suppressed, but whatever action the trial court did take was on the record of the preliminary examination alone. The trial court, had it chosen to consider the constitutionality of the seizure, could not have properly decided whether the police officer had probable cause to seize the evidence without a full evidentiary hearing. For the Court of Appeals to rule on the merits of the issue in such an absence of proper procedure is inadequate and erroneous. Therefore, the case is remanded to the trial court for an evidentiary hearing. At the hearing the trial court shall not place exclusive reliance on the transcript of the preliminary examination. To disbelieve the police officer's account of the events leading up to the seizure of the heroin is, in substance, to determine that the evidence was not within the "plain view" doctrine and that it was seized impermissibly. The trial court cannot properly assess credibility of a witness from the cold record of the preliminary examination. Further, the record of a preliminary examination may be critically wanting for purposes of analysis of a motion to suppress evidence as being unconstitutionally seized. At a *de novo* evidentiary hearing, the

trial court will have an opportunity to fully weigh the nature of any relevant facts the prosecution may choose to advance.

Reversed and remanded for further proceedings.

Justice Levin concurred in the disposition of the case but wrote separately for two reasons:

1. This case did not require the judge, and consequently does not require the Supreme Court, to review the magistrate's exercise of discretion in binding the defendant over. The sound administration of justice requires that a judge eschew reviewing a magistrate's exercise of discretion when he is, in essence, asked to review the credibility of a witness whose testimony would be evaluated at a suppression hearing, and the same interest requires that the Supreme Court not address that issue of credibility when it remains to be passed upon on remand and may well return to the appellate courts, albeit in a different form. The judge should have recognized that the essence of the issue presented to him was whether the evidence should be suppressed and that he could avoid reviewing the magistrate's discretionary decision by exercising his own independent judgment upon a suppression hearing, and should have held an evidentiary hearing and based his conclusion on his own assessment of the witnesses. Since the opinion of the Court indicates that there may be some circumstances in which preliminary examination testimony can be used to decide a motion to suppress, it should provide such guidance as it can at this time. While a preliminary examination transcript may be used to establish uncontroverted facts, where there is an issue of credibility it is necessary to conduct a hearing and hear the witnesses. The parties should not be allowed to stipulate to the use of a preliminary examination record as a basis for deciding an issue of credibility, although the pressure to do so may be strong.

2. Repetition of the hyperbolic statement that an exercise of discretion will be reversed only if the result evidences perversity of will, defiance of judgment, or passion or bias is simplistic and misleading, and should not be indulged in by this Court or any other. The statement had its origin in an appeal in a divorce case in which an abuse of discretion was asserted because a trial judge had not granted the full increase in child support payments sought by the plaintiff. The Court, impatient with this type of appeal and wishing to send an emphatic message to this particular class of appellants, overstated the standard of review and raised it to apparently insurmountable heights. A more balanced view of judicial discretion is that it denotes the absence of a hard and fast rule; when invoked as a

guide to judicial action, it means a sound discretion, that is, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. After courts gain experience with the considerations involved in a particular type of decision, a hard and fast rule may develop. The gradual development of rules and standards, however, assumes that a discretionary decision is reviewable and, in fact, is fully reviewed by a higher judicial authority whenever a question of abuse is raised. A standard that states that only the most extreme and perverse discretionary decisions will be reversed seriously threatens the evolutionary process. Further, not all discretionary decisions are judged by the same standard. Each discretionary decision requires a unique analysis and mode of review. References to a statement which imply a review which would reverse only in the most egregious cases and which serve as a substitute for reasoned analysis should not be continued.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen* for defendant.

PER CURIAM *(to reverse and remand).* There are two issues in this case. The first is whether the trial court, relying solely on the preliminary examination transcript, correctly quashed the information against the defendant on the theory that the testimony of the sole witness before the examining magistrate was "inherently incredible": the defendant argues that no one would wait until the last minute, as the police were reaching his or her car, to secrete narcotics after having been followed by these same officers for some distance. The examining magistrate chose to believe the officer rather than defendant's argument. The second issue is whether the Court of Appeals, though doubtful of

the validity of the trial court's quashing of the information, correctly affirmed the trial court on the basis of defendant's Fourth Amendment illegal seizure argument, although the trial court never looked beyond the record of the preliminary examination and the suppression argument had not been the articulated basis of the trial court's decision to quash.

As to the trial court's quashing of the information, we find such action to have been erroneously taken. The examining magistrate did not abuse his discretion in finding probable cause to bind defendant over on the charged offense. Regarding the Court of Appeals affirmance of the trial court due to its own determination of the unconstitutionality of the seizure of the evidence, we hold such determination to have been misdirected since the pretrial hearing on defendant's motion was not only devoid of any relevant discussion or consideration relating to the existence of probable cause to seize the evidence, but more particularly was made on the basis of the preliminary hearing transcript and not on a full evidentiary hearing. We specifically disapprove of the practice of relying exclusively on preliminary examination transcripts in the conduct of suppression hearings. Accordingly, in lieu of granting leave to appeal, and pursuant to GCR 1963, 853.2(4), we reverse the judgment of the trial court and vacate the judgment of the Court of Appeals and remand the matter to the trial court for the holding of a *de novo* evidentiary hearing to resolve the issue of whether the arresting officers had probable cause to seize the evidence.

## I. FACTS

The sole factual exposition of the events sur-

rounding defendant's arrest and the seizure of the evidence was that of Officer James Henry, one of two officers arresting the defendant and the only person to testify at defendant's preliminary examination. According to Officer Henry, he and his partner observed the car in which defendant was riding as a passenger speeding. They pursued the car in a marked scout car for several blocks, pacing its speed, but staying about three quarters of a block behind, before they signaled it to pull over after coming up to it at a stop sign. The car in which defendant was riding then proceeded almost another full block before it could find a spot in which to pull over. Officer Henry then testified that as he approached the car on the driver's side and his partner approached on the passenger's side, he observed defendant drop to the floor of the car a brown paper bag protruding from which he could see a large plastic bag containing green coin envelopes. The defendant then, according to Officer Henry, attempted to "kick" the bag under the seat with his left hand. Based on the officer's prior experience with coin envelopes as a means of packaging narcotics, the defendant and the driver were thereupon ordered out of the vehicle and the bag was seized from the car. Upon opening the brown bag at the scene the officers found it to contain three large plastic bags with a total of 230 green coin envelopes dispersed among the three bags. After opening one of the green coin envelopes and finding it to contain an off-white powder which they suspected to be heroin, the officers arrested the defendant. It was stipulated at the preliminary examination that 60 of these coin envelopes, representing a sampling from all three plastic bags, were found to contain heroin. The defendant was charged with possession of heroin

with intent to deliver. MCL 333.7401; MSA 14.15(7401).

At defendant's preliminary examination defense counsel argued that the defendant should not be bound over since the testimony of Officer Henry was "inherently incredible". According to defense counsel it was beyond belief that two men possessing a bag containing a quantity of heroin would wait until the officers were right next to their car before one of them would attempt to secrete it, despite the fact that they had been paced for several blocks by a marked scout car containing two uniformed officers, that they had proceeded for almost one full block after being signaled by the police to pull over, and that they had to wait for the officers to get out of their car which had been parked five feet behind their own and approach them on foot. The examining magistrate, however, chose to believe the testimony of Officer Henry and bound defendant over for trial on the charged offense.

Following the preliminary examination the defendant filed a pretrial motion which he entitled "Motion to Suppress the Evidence and Quash the Information". However, at the outset of its hearing on this pretrial motion, the trial court characterized it simply as one to "quash information", and concerned itself throughout the hearing almost exclusively with the credibility of Officer Henry, the officer who testified at the preliminary examination. There was no consideration at this hearing as to the suppression of the heroin as a matter of constitutional law, no one addressing the issue whether, even assuming the facts as related by the officer were true, there was or was not probable cause to seize the bag containing the heroin under the "plain view" exception to the warrant require-

ment. Instead, the trial court found that the examining magistrate had abused his discretion in not finding Officer Henry's testimony "inherently incredible" and quashed the information for that reason.

The Court of Appeals affirmed the trial court's decision in a memorandum opinion on the different rationale that the police lacked probable cause to seize the brown bag. Support for this rationale was provided exclusively by citation to *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979), *lv den* 407 Mich 877 (1979).

## II. TRIAL COURT REVIEW OF THE EXAMINING MAGISTRATE

As already indicated, following the preliminary examination the defendant filed a pretrial motion to suppress the evidence and quash the information. On the sole basis of its disbelief of Officer Henry's testimony at the preliminary examination, the trial court did quash, saying:

"A fair reading of the testimony that went into that case makes it inherently incredible that that is the method by which this observation of the bag could have been done."

In other words, the trial judge substituted his judgment for that of the examining magistrate.

In reviewing the decision of a magistrate to bind over an accused person, the trial court may not properly substitute its judgment for that of the magistrate, but may reverse a magistrate's decision only if it appears on the record that there has been an abuse of discretion. *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974); *People v Dellabonda,* 265 Mich

486, 491; 251 NW 594 (1933). In *Dellabonda,* this Court stated:

"Primarily the question of probable cause is for the consideration of and determination by the examining magistrate. This Court may not agree with the findings of such magistrate but it has no right to substitute its judgment for his except in case of a clear abuse of discretion."

Part and parcel of the magistrate's function of determining whether an offense has been committed and whether probable cause exists for charging the defendant therewith is the duty of passing judgment on the credibility of witnesses. *People v Paille #2,* 383 Mich 621, 627; 178 NW2d 465 (1970); *People v Karcher,* 322 Mich 158, 164; 33 NW2d 744 (1948). This was emphasized in *Paille #2,* where this Court said:

"[T]he magistrate had not only the right but, also, the duty to pass judgment not only on the weight and competency of the evidence, but also the credibility of the witnesses.

"We have often commented upon the fact that the judge who hears the testimony has the distinct advantage over the appellate judge, who must form judgment solely from the printed words."

Our task in assessing the trial court's decision to quash the information is to determine whether or not there has been an abuse of discretion on the part of the examining magistrate because, as observed above, a reviewing trial court may only substitute its judgment for that of the examining magistrate where there has been such an abuse. Our standard for review, furthermore, in testing for an abuse of discretion is a narrow one. The classic description of this standard, first articu-

lated in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959) (a modification of a divorce decree case) and later given a somewhat stricter interpretation in the criminal context by this Court in *People v Charles O Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972), reads as follows:

"Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

See also *People v Wilson,* 397 Mich 76, 80-81; 243 NW2d 257 (1976); *People v Merritt,* 396 Mich 67, 80; 238 NW2d 31 (1976).

In passing, a careful reading of the transcript of the pretrial motion to suppress the evidence and quash the information reveals that the trial judge may indeed have misapprehended the preliminary examination testimony. The trial court speaks twice of the defendant "being *chased* several blocks" (emphasis supplied), whereas the witness's testimony at the preliminary examination was that the police *"paced"* the car and were three-quarters of a block behind it. The police, in fact, did not use blinkers or siren until they reached the pursued car at a stop street, after which the pursued vehicle went about a block farther before it could pull over. In other words, until the police

were almost upon the defendant and his companion and shortly before the ultimate stop, it is entirely possible that neither person knew they were being pursued. Under this set of facts, the time in which the defendant had an opportunity to decide what to do with the brown paper bag containing the green coin envelopes is appreciably shorter than if he had been involved in a car chase for several blocks, as it seemed the trial court envisioned.

In any event, we cannot say a magistrate who had the opportunity to hear Officer Henry's testimony and observe his demeanor abused his discretion, as a matter of law, in giving credence to the officer's testimony and in ordering the defendant bound over for trial.[1]


## III. APPELLATE COURT REVIEW

The Court of Appeals, while having "serious doubts" regarding the trial court's finding, on the basis of a simple review of the preliminary examination transcript, that Officer Henry's testimony was "inherently incredible", affirmed the trial court's decision on the theory that the trial court should have suppressed the heroin from evidence on the authority of *People v Young, supra.*

However, we are here not primarily concerned with the precedential value of *Young.* What really concerns us in this matter is that the Court of

---

[1] It is also noteworthy that the only case which defendant cites in support of his contention that the testimony of Officer Henry was "inherently incredible", *Henry Jackson v United States,* 122 US App DC 324, 326-327; 353 F2d 862, 864-865 (1965), is clearly not in point. *Jackson* involved appellate review of a bench trial, not trial court review of an examining magistrate. *Jackson,* additionally, was correctly decided under a "clearly erroneous" standard, applicable in that case to the trial court, and not under an "abuse of discretion" standard applicable in this case to the examining magistrate.

Appeals would presume under the circumstances of this case to affirm the trial court on the basis that the evidence should have been suppressed. Not only was the probable cause issue not explicitly passed upon by the trial court, but the circumstances of this case, of course, are that whatever action the trial court did or did not take, it did so on the basis of the preliminary examination record alone.

Even had the trial court chosen to give express consideration to the constitutionality of the seizure, it could not properly have decided whether or not the evidence should have been suppressed without a full evidentiary hearing—listening to witnesses and judging other evidence—to determine whether or not the seizing officer had probable cause to seize the evidence. Since the trial court did not have such a full evidentiary hearing it would have no way of knowing whether the facts in the case authorized or did not authorize the officer to seize the evidence. For the Court of Appeals to presume to rule on the merits in such an absence of proper procedure requires this Court to point out to that Court and all trial courts that a motion to suppress evidence requires the holding of a full evidentiary hearing and any attempt to rule on such a motion on the basis of a preliminary examination transcript alone is inadequate and erroneous.[2]

Since a trial court has not yet had an opportunity to examine the totality of circumstances surrounding the contested seizure with an eye toward determining the existence or absence of probable

    [2] Of course, if a witness who testified at the preliminary examination is unavailable to testify at the suppression hearing, the trial court could, of necessity, properly rely on his or her preliminary examination testimony to aid in the determination of constitutionality. *Cf.* MRE 804.

cause, we remand for an evidentiary hearing on defendant's motion to suppress to help insure the constitutionally correct resolution of this issue.

The hearing upon remand is to be a *de novo* inquiry into the constitutional validity of the contested seizure. The trial court in this case, and all other trial courts in the conduct of all future suppression hearings, shall not place exclusive reliance on the preliminary examination transcript in the determination of the legality of a contested search or seizure.[3]

The defendant presents here what is essentially a bifurcated argument respecting the constitutionality of the seizure. First, defendant still maintains that the allegations of the arresting officers are "inherently incredible". While at heart this is a factual matter involving credibility concerns, it is a matter whose resolution is of constitutional dimensions. To disbelieve the testifying officer's account of the chain of events leading up to the seizure of the heroin is, in substance if not in form, to determine that the evidence in question was seized in some manner other than through "plain view". Since no other constitutionally justifying circumstances, as, for example, consent, are

---

[3] We recognize that it has often been the practice of our trial courts to rely exclusively on preliminary examination transcripts in ruling on motions to suppress. This, of course, meant that appellate courts were also limited to the preliminary examination transcripts in passing on search and seizure issues since testimony later taken on the trial, amplifying the circumstances of the search or seizure, cannot be considered. *People v Miller,* 245 Mich 115, 117; 222 NW 151 (1928). See, *e.g., People v Zeigler,* 358 Mich 355, 359; 100 NW2d 456 (1960); *People v Kaigler,* 368 Mich 281, 297-299; 118 NW2d 406 (1962); *People v Miller,* 26 Mich App 665, 667; 182 NW2d 772 (1970). Today we specifically prohibit this practice in order to promote a more thorough exposition of the events surrounding a contested search or seizure. This, we hope, will aid the trial courts as well as the appellate courts in drawing the difficult line between the constitutionally permissible search or seizure and the constitutionally impermissible one.

advanced for the warrantless seizure of the evidence, one can only infer, if one disbelieves the testifying officer, that the evidence was seized impermissibly. In light of this we believe the trial court should have the opportunity to view first-hand the demeanor of the officer as he relates his version of the circumstances surrounding the contested seizure and to pass anew on his credibility. Other witnesses, too, may either corroborate or diminish Officer Henry's testimony. The trial court cannot properly assess credibility from the cold record prepared at the preliminary examination. A suppression hearing, unlike a hearing to quash an information due to an alleged magisterial abuse of discretion, is not to be limited to the record of the preliminary examination. In short, at a suppression hearing the trial court may choose to believe or not believe the "plain view" account of the officer, or may choose to believe another proffered version of the relevant events in determining whether to suppress the seized evidence. This action does not reflect upon the effect of the magistrate's decision in the binding over, where another rule of review obtains.

Second, defendant also argues that there was no probable cause supporting the warrantless seizure of the evidence even if Officer Henry's story is to be believed. Here it is not the facts per se that are in dispute, but the legal conclusion to be drawn from these facts, *i.e.,* did the factual situation, as recounted by Officer Henry, give the police probable cause to seize the evidence. Nonetheless, a further exposition of certain constitutionally significant factual matters in this case can be of immeasurable aid to the trial court in making its constitutional determination. The factual record prepared at the preliminary examination may, for

numerous reasons, be found critically wanting when analyzed for purposes of a motion to suppress. For example, the preliminary examination may have focused on facts surrounding actions not especially helpful to a constitutional determination or it may prove to be too skeletal to benefit a suppression hearing due to inadequate time for preparation of counsel or to counsel's fear of disclosing his or her case at the preliminary examination. *Cf. People v Olajos,* 397 Mich 629, 634-635; 246 NW2d 828 (1976). See, also, *California v Green,* 399 US 149, 189; 90 S Ct 1930; 26 L Ed 2d 489 (1970) (Brennan, J., dissenting). By requiring a *de novo* evidentiary hearing on remand, the trial court will have an opportunity to fully weigh the nature of the furtive gesture, as well as such "other factors" as the workaday knowledge and experience of the arresting officers, and any other relevant facts the prosecution may choose to advance. See *People v Howell,* 394 Mich 445, 447; 231 NW2d 650 (1975).[4]

Accordingly, in lieu of granting leave to appeal, and pursuant to GCR 1963, 853.2(4), we vacate the Court of Appeals affirmance of the trial court and remand this matter to the trial court for an evidentiary hearing on the issue of probable cause for purposes of the motion to suppress. In so doing, we do not intend to intimate any view as to the substantive merits of defendant's motion to suppress the evidence.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

[4] The issue of whether opposing counsel may stipulate to the trial court's sole reliance on a preliminary examination transcript in passing on a motion to suppress evidence is not before us, and we therefore do not consider it.

LEVIN, J. *(concurring).* I concur in the Court's disposition remanding the cause to Recorder's Court for an evidentiary hearing on the suppression issue. I agree that the Court of Appeals erred in passing upon the merits of the motion to suppress without a suppression hearing having been held by that court. I write separately for two reasons:

This case did not require the judge, and consequently does not require us, to review the magistrate's exercise of discretion in binding the defendant over. The meritorious question presented by both the motion to suppress and the motion to quash the information involved the credibility of the arresting officer. That question should have been addressed at a suppression hearing, at which the judge would have exercised his own discretion and would have assessed credibility on the basis of live testimony.

Reiteration of the "classic description" of abuse of discretion set forth in *Spalding v Spalding*[1] gives further currency to an overly restrictive conception of the role of appellate courts in reviewing an exercise of discretion.

I

The preliminary question raised by this appeal is the nature of the motion. This Court, in effect, characterizes the motion as a request to review the magistrate's decision to bind over rather than a motion to suppress. The Court finds that there was no abuse of discretion but remands to permit the judge, in the independent exercise of his own discretion, to reverse the magistrate's decision after holding a suppression hearing.

[1] *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959).

The Court's analysis is not conceptually incorrect, but I cannot join in it because the sound administration of justice requires that a judge eschew reviewing a magistrate's exercise of discretion when he is, in essence, asked to review the credibility of a witness whose testimony would be evaluated at a suppression hearing. The same interest requires that this Court not address that issue of credibility when it remains to be passed upon on remand and may well return to the appellate courts, albeit in a different form.

The judge should have recognized that the essence of the issue presented to him was whether the evidence should be suppressed and that he could avoid reviewing the magistrate's discretionary decision by exercising his own independent judgment upon a suppression hearing. Conceding that the defendant's motion asked the judge to review the magistrate's decision, it should nevertheless have been apparent to the judge that the motion was essentially one to suppress the evidence on the ground that the circumstances leading to its seizure were not as described by Officer Henry. It should have been clear to the judge that he could not readily substitute his discretion for that of the magistrate, but that he could readily do so on a separate record.

Under these circumstances the judge erred. He should have cut to the heart of the matter, interpreted the motion as one to suppress, held an evidentiary hearing and based his conclusion on his own assessment of the witnesses.

The opinion of the Court indicates that there may be circumstances in which preliminary examination testimony can be used to decide a motion to suppress.[2] Since we raise the question, we

[2] See opinion of the Court, p 382.

should provide such guidance as we can at this time. While a preliminary examination transcript may be used to establish uncontroverted facts, where there is an issue of credibility it is necessary to conduct a hearing and hear the witnesses. Unless the judge himself hears the witnesses, the advantage of the judge's superior opportunity to assess credibility is lost.

I would not allow the parties to stipulate to use of a preliminary examination record as a basis for deciding a credibility issue. There will be judges who would prefer to rely on a transcript rather than hold a hearing and whose wishes in that regard will become known to the parties. Only the most resolute lawyers will be able to resist; most will be constrained to stipulate to the use of the preliminary examination transcript. Indeed, some lawyers, especially inadequately compensated assigned counsel, may themselves be reluctant to conduct a full hearing.

Thus, where it should be apparent to the judge that the determinative issue—here the assertedly inherent incredibility of the officer's testimony—will be addressed both in reviewing the magistrate's discretion in binding over the defendant and in determining *de novo* whether the evidence should be suppressed, he should avoid the difficult and sensitive review of discretion—where the scope of his inquiry is limited—in favor of holding the suppression hearing where he can review the evidence *de novo* and assess the credibility of witnesses in person.

In reviewing the judge's review of the magistrate's decision to bind over we compound the judge's error. Both are the same kind of mistake. Once it appears that the motion involves a question which can be decided by the judge in an

independent exercise of his discretion and that it
was error for him to assess the magistrate's deci-
sion, the case should be remanded by the appellate
court for hearing. There is no need to reach the
question whether the magistrate erred. That ques-
tion should not be reached to avoid appellate
intrusion on the judge's independent exercise of
discretion on remand and to avoid the appearance
of inconsistent decision making.

Only lawyers will understand a conclusion that
in his role as reviewer of a magistrate's action, a
judge cannot assess credibility, but as a trier of
fact he can do so on a separate record. By address-
ing the merits of the magistrate's decision, we are
setting the one court of justice up to be perceived
as having taken a pratfall, although we acknowl-
edge that a different question would be presented
if this case were again to reach the appellate
courts.

In sum, I would hold that where a judge is
confronted with such a motion, he should recog-
nize the need for conducting an independent hear-
ing, rather than embarrass his ability to properly
dispose of it by approaching the matter on an
inadequate or inappropriate record. Similarly, this
Court should not reach the substantive issue about
which a trial court on remand will be asked to
exercise its discretion and which may return to
the appellate courts for review.

## II

*Spalding's* hyperbolic statement leaves the im-
pression that a judge will be reversed only if it can
be found that he acted egregiously—the result
evidencing "perversity of will", the "defiance [of
judgment]", "passion or bias". To repeatedly in-
voke this overstatement leads lawyers and judges

to believe that a discretionary decision is virtually immune from review and leads appellate courts to view any challenge to such a decision as essentially unfounded. Repetition of this statement is simplistic and misleading, and should not be indulged in by this Court or any other.

The question in *Spalding* was whether the judge had abused his discretion by granting only half the requested increase in child support payments. Appellant had been granted three prior increases, from an original $15 weekly to $35, over a period of four years. She then sought an increase to $50, but the judge granted an increase to only $42.50.

This Court was obviously impatient with this type of appeal and wished to send an emphatic message to this particular class of appellants. It introduced its statement of the standard as follows:

"We have held repeatedly, and we again hold, that we will not interfere with the discretion of the trial chancellor in these cases unless a clear abuse thereof is manifest in the result reached below. The kind of determination before us requires a weighing of human and economic factors of the utmost complexity, a weighing that can best be accomplished at the local level, not in these chambers. In view of the frequency with which cases are reaching this Court assailing the exercise of a trial court's discretion as an abuse thereof, we deem it pertinent to make certain observations with respect thereto in the interests of saving expense to the litigants and avoiding delay in reaching final adjudication on the merits."[3]

The rhetoric of *Spalding* was the result. A more restrained statement, speaking merely of the exercise of will, logic and reason, would have said all that needed to be said. Unfortunately, in the en-

---

[3] *Spalding v Spalding, supra*, p 384.

deavor to send an unmistakably clear message the Court raised the standard of review to an apparently insurmountable height.

A more balanced view of judicial discretion was presented in *Langnes v Green,*[4] where Justice Sutherland said:

"The term 'discretion' denotes the absence of a hard and fast rule. * * * When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

Discretion is lodged in a judge in areas where "hard and fast" rules have not yet developed. This, of course, does not mean that once the common law labels a particular type of decision discretionary that it will remain so forever. After courts gain experience with the considerations involved in a particular type of decision, a "hard and fast" rule may develop. Repeated encounters with a particular type of question, at first labeled discretionary, may over time lead to a rule or at least to a more specific list of considerations to be weighed by the judge and to that extent limit his discretion.[5]

This gradual development of rules and standards, however, assumes that a discretionary decision is reviewable and, in fact, is fully reviewed by a higher judicial authority whenever a question of abuse is raised. A standard of review that states

[4] *Langnes v Green,* 282 US 531, 541; 51 S Ct 243; 75 L Ed 520 (1931).

[5] As this Court noted in *Teetzel v Atkinson,* 292 Mich 592, 595; 291 NW 18 (1940): "Courts have not attempted to define in every case what constitutes abuse of discretion; rather, various principles have been established as guides to direct the actions of courts."

that only the most extreme and perverse discretionary decisions will be reversed seriously threatens this evolutionary process by giving the impression that a discretionary decision is beyond effective review.

Further, to constantly apply a standard developed in one particular context gives the impression that all discretionary decisions are judged by the same standard. This is not the case.[6] The types of discretionary decisions are multifarious and for each type of decision different considerations must be recognized and weighed by the court. Although each decision may be discretionary, each requires a unique analysis and mode of review. As the Court notes, we have held that the standard of review is stricter in a criminal case.[7] This is only a more specific statement of the general principle that discretion must be exercised "with regard to what is right and equitable under the circumstances and the law".[8]

Thus when a question of abuse of discretion is properly framed, it is incumbent upon a reviewing court to engage in an in-depth analysis of the record on appeal. This Court has, in spite of references to *Spalding,* continued to give full-fledged review to discretionary decisions by carefully weighing the various rights and considerations involved in each type of discretionary decision.[9] We should, however, discontinue the references to

[6] "That is to say, we have no single standard by which we measure the exercise of such discretion in all cases where discretionary judicial actions are challenged." *Alder v Flint City Coach Lines, Inc,* 364 Mich 29, 30; 110 NW2d 606 (1961) (equally divided Court).

[7] See opinion of the Court, p 387; *People v Wilson,* 397 Mich 76, 81; 243 NW2d 257 (1976); *People v Merritt,* 396 Mich 67, 80-81; 238 NW2d 31 (1976); *People v Charles O Williams,* 386 Mich 565, 573; 194 NW2d 337, 340 (1972).

[8] *Langnes v Green, supra.*

[9] See cases cited in fn 7, *supra.*

*Spalding*, which imply a review which would reverse only in the most egregious cases and that incantation of the *Spalding* standard may serve as a substitute for reasoned analysis.

Even if the only question raised in the appellant's one appeal of right concerns an abuse of discretion, significant rights entitled to careful review may be involved. More than a talismanic reference to *Spalding* is called for. The facts, the equities, the rights of the parties, and the interests of the judicial system should all be examined and weighed carefully when reviewing a discretionary decision.

This is not to say, of course, that review of a discretionary decision is not fundamentally different than review of a question of law. In the latter instance a reviewing court may substitute its judgment whenever, after full analysis, it decides the judge erred. In a discretionary matter a higher quantum of proof of error is required and the reviewing court will necessarily be more reluctant to reverse. That the line which bounds the proper decision of the court will be less clear for a discretionary decision does not imply that there is no boundary at all. The difference in review is one of degree—not of kind.[10]

I would, therefore, no longer repeat the *Spalding* statement of the standard of review for abuse of discretion. To do so impedes the proper evolution of rules and standards for specific types of decisions and glosses over the different considerations involved in various discretionary decisions.

---

[10] As Judge Learned Hand noted with respect to review of factual findings:

"It is idle to try to define the meaning of the phrase, 'clearly erroneous'; all that can be profitably said is that an appellate court, though it will hesitate less to reverse the finding of a judge than that of an administrative tribunal or of a jury, will nevertheless reverse it most reluctantly and only when well persuaded." *United States v Aluminum Co of America*, 148 F2d 416, 433 (CA 2, 1945).