# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STERLING LANE,

        Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 335153
Wayne Circuit Court
LC No. 15-009679-01-FH

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b; felon in possession of a firearm, MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6); and possession of marijuana, MCL 333.7403(2)(d). Defendant was sentenced to 10 years' imprisonment for the felony-firearm, third offense conviction, and to time served on the remaining convictions. We affirm.

In his principal appellate brief and his Standard 4 brief, defendant argues that the trial court erred in denying his motion to suppress evidence. We disagree.

A trial court's findings of fact in a suppression hearing are reviewed for clear error, but the ultimate decision on a motion to suppress is reviewed de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). This Court reviews de novo the underlying constitutional issues, including whether a Fourth Amendment violation occurred. *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014).

"The United States and the Michigan Constitutions guarantee the right to be secure against unreasonable searches and seizures." *Henry*, 305 Mich App at 137, citing US Const, Am IV, and Const 1963, art 1, § 11. "The Michigan constitutional provision is generally construed to afford the same protections as the Fourth Amendment." *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011) (citation omitted). A warrantless search is deemed unreasonable in the absence of probable cause and the applicability of an exception to the warrant requirement. *Henry*, 305 Mich App at 137.

One of the exceptions to the Fourth Amendment warrant requirement is the so-called "exigent circumstances" exception. "Hot pursuit" is a form of "exigent

-1-

circumstances." Under the hot pursuit exception, an officer may chase a suspect into a private home when the criminal has fled from a public place. Other recognized exigencies include the need to prevent the imminent destruction of evidence, to preclude a suspect's escape, and where there is a risk of danger to the police or others inside or outside a dwelling. In the absence of hot pursuit, the police must have probable cause to believe that at least one of the other three circumstances exists, and the gravity of the crime and the likelihood that a suspect is armed should be considered. The validity of a search without a warrant ultimately turns on the reasonableness of the search, as perceived by the police. [*Id*. at 138 (quotation marks and citations omitted).]

See also *Warden v Hayden*, 387 US 294, 298-299; 87 S Ct 1642; 18 L Ed 2d 782 (1967) (holding that exigent circumstances justified a warrantless entry into a house to search for a robber and that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."); *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 208 (1997) (listing the circumstances that may justify a warrantless entry of a residence, including "the hot pursuit of a fleeing felon, to prevent the imminent destruction of evidence, to preclude a suspect's escape, and where there is a risk of danger to police or others inside or outside a dwelling.").

At the evidentiary hearing on the motion to suppress, Detroit Police Officer William Zeolla testified that he and his partner, Detroit Police Officer Daniel Harnphanich, responded to a report of shots fired at 15464 Murray Hill, which is approximately two houses north of 15444 Murray Hill. They reached Murray Hill within five minutes of receiving the report. Zeolla was driving a fully marked black special operations police vehicle. It was dark outside, and Zeolla saw defendant walking on Murray Hill. Defendant was the only person that Zeolla saw in the area. Zeolla illuminated defendant with a spotlight attached to Zeolla's police vehicle. The reason why Zeolla illuminated defendant was because there had been a report of shots fired in the area, and Zeolla wanted to obtain visibility of anyone who was outside in case the person was armed with a weapon or was perhaps still firing shots. After being illuminated, defendant grabbed his right waistband area and ran toward a house located at 15444 Murray Hill, which was about two houses away. On the basis of his experience as a police officer, Zeolla believed that defendant's behavior indicated that he was possibly armed with a handgun. Zeolla and Harnphanich got out of their police vehicle and chased defendant on foot.

Zeolla testified that defendant entered the house located at 15444 Murray Hill by running up the porch steps and through the front door. Before entering the house, defendant removed a handgun from his right side. After defendant entered the house, and while Zeolla was still outside running toward the house, Zeolla saw through a front picture window that defendant leaned down near a couch that was positioned along the same wall as the picture window. Zeolla could not see defendant's arms or hands at that point. Harnphanich entered the house before Zeolla did. As Zeolla entered the house, he saw that the entryway area was just a few feet and that the living room defendant had entered was immediately to the right; Zeolla met defendant at the front doorway and handcuffed defendant. Zeolla conducted a pat-down search of defendant's person for safety purposes and did not recover the handgun from defendant's person. Zeolla then walked to the couch area where he had seen defendant bend down; Zeolla saw the handle of a gun visibly protruding from under a cushion that was on top of the couch. It was the same gun

Zeolla had observed defendant possessing earlier. Zeolla recovered the handgun and placed it into evidence. After determining that defendant did not possess a concealed pistol license, Zeolla placed defendant under arrest. Zeolla determined from defendant's identification card that the house at 15444 Murray Hill was not defendant's residence; rather, defendant's residential address was 2162 East Outer Drive. Defendant's girlfriend lived at 15444 Murray Hill.

Zeolla was the only witness to testify at the evidentiary hearing on the motion to suppress. Defendant did not present any witnesses or evidence at the evidentiary hearing. When defense counsel was presenting argument at the end of the evidentiary hearing, after defense counsel had already stated that she was not going to present any witnesses, the trial court noted that no evidence had been presented to indicate that defendant resided at 15444 Murray Hill or that defendant had an expectation of privacy in that house. Defense counsel stated that she could voir dire defendant in order to ask him questions about that. The trial court stated, "It's too late. It's too late. We're at argument. You had an opportunity to present it, and you didn't. That's what I was waitin' on, something to show that he would at least have an expectation of privacy in that particular location. . . . I have to accept what's placed on the record. There was nothing to – to – to test Officer Zeolla's information. And there certainly wasn't nothin' to counter it."

Initially, we note that defendant failed to establish at the evidentiary hearing on his motion to suppress that he possessed standing to contest the search of 15444 Murray Hill.

> The right to be free from unreasonable searches and seizures is personal, and the right cannot be invoked by a third party. For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable. A court determines the issue of standing by examining the totality of the circumstances, and a defendant bears the burden of establishing that he has standing. [*People v Mahdi*, 317 Mich App 446, 458-459; 894 NW2d 732 (2016) (quotation marks and citations omitted).]

This Court has further explained:

> Factors relevant to the determination of standing include ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. at 459 (citation omitted).]

No evidence was presented at the suppression hearing to establish that defendant had a legitimate expectation of privacy in the house located at 15444 Murray Hill. Defendant presented no evidence or witnesses at the hearing. Zeolla, the only witness to testify at the hearing, indicated that defendant's girlfriend lived at the house and that defendant's identification card contained a different residential address. No evidence was presented at the suppression hearing that defendant was staying at his girlfriend's house or had any expectation of privacy there. Only later, after defendant was convicted and moved for a new trial, did he produce evidence

suggesting that he regularly stayed at 15444 Murray Hill and kept possessions there. A motion for the suppression of evidence must be determined on the basis of the facts produced at the time of the suppression hearing and cannot be amplified by evidence presented later. See *People v Kaigler*, 368 Mich 281, 288; 118 NW2d 406 (1962); *People v Cutler*, 73 Mich App 313, 319-320; 251 NW2d 303 (1977). Defendant thus failed to establish at the suppression hearing that he possessed standing to challenge the search of the house at 15444 Murray Hill.

In any event, Zeolla's testimony at the suppression hearing established that exigent circumstances justified the officers' actions. First, there was no search or seizure of defendant before he entered the house. "In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001) (citations omitted). Constitutional safeguards vest only once a citizen has been seized. *Id*. The mere pursuit of a person does not constitute a seizure; rather, the application of physical force or the suspect's submission to an officer's show of authority is required in order for a seizure to have occurred. *California v Hodari D*, 499 US 621, 626; 111 S Ct 1547; 113 L Ed 2d 690 (1991); see also *People v Lewis*, 199 Mich App 556, 559-560; 502 NW2d 363 (1993) (holding that the defendant was not seized until a police officer actually laid his hands on the defendant, and explaining that "[e]ven if we assume that the officers' pursuit of defendant amounted to a show of authority, because defendant did not submit to that show of authority, no seizure occurred until [an officer] physically took hold of him."). Here, defendant fled from the police and did not submit to any show of authority before entering the house, nor did the officers put their hands on defendant outside the house. Hence, no seizure occurred before defendant entered the house. In any event, given that (1) the officers were responding to a report of shots fired in the area, (2) defendant was the only person that the officers saw walking in the area, and (3) defendant grabbed his right waistband area and fled upon being illuminated by the police spotlight, the officers had reason to believe that defendant may have been carrying a concealed weapon or may have been involved in the reported shooting incident.

Further, the officers' entry into the house at 15444 Murray Hill was justified by exigent circumstances. The officers were pursuing defendant, who had exhibited suspicious behavior by grabbing his right waistband area and fleeing upon being illuminated by a police spotlight in an area where there had been a recent report of shots having been fired. Defendant then pulled a handgun from his waistband area as he entered the house. The officers were thus pursuing a fleeing suspect when they entered the house. The officers had reason to believe that defendant could pose a danger to the officers or to persons inside the house given that defendant was in possession of a firearm and had fled from the police in the vicinity in which there had been a report of shots fired. Zeolla saw defendant through the picture window leaning down in the area of a couch. It was thus reasonable to infer that defendant was attempting to conceal the firearm. Overall, the entry into the house to pursue defendant was justified under the hot pursuit doctrine.

Once the officers entered the house, they were permitted to seize incriminating evidence that was in plain view. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996) (citations omitted). As discussed, the officers had lawfully entered the house in hot pursuit of defendant. Zeolla's testimony indicated that he saw

-4-

the handgun protruding from underneath a cushion on the top of the couch. The couch was to the immediate right of the entryway. Zeolla had seen defendant leaning down in this area. Zeolla indicated that it was the same handgun he had seen defendant retrieve from his right waistband area upon entering the house. Zeolla thus had reason to believe that the handgun was incriminating because it was the gun defendant appeared to have been concealing before he entered the house.

In his Standard 4 brief, defendant suggests that the plain view doctrine is inapplicable because Zeolla walked from the entryway to the living room to retrieve the handgun. Defendant relies on Zeolla's trial testimony indicating that a wall separated the entryway from the living room and that the living room cannot immediately be seen upon entering the house. As discussed, review of this issue is based on the testimony presented at the suppression hearing and cannot be amplified by trial testimony. See *Kaigler*, 368 Mich at 288. The exact location where Zeolla was standing before he approached the living room couch is not clear, but Zeolla's testimony at the suppression hearing indicated that the entryway area took up only a few feet and that the living room was to the immediate right of the entryway. Zeolla did not recall any door separating the living room from the entryway. Given the small area in which these events transpired, we are not convinced that the plain view doctrine is inapplicable.

But even if the firearm was not in plain view, Zeolla's entry into the living room to seize the weapon was justified by exigent circumstances. The fact that a gun used by a fleeing suspect is missing may constitute exigent circumstances justifying a warrantless search. See *People v Esters*, 417 Mich 34, 51; 331 NW2d 211 (1982) (opinion by COLEMAN, J.) (concluding that a "missing gun and missing accomplice provided exigent circumstances."); *id*. at 60 (opinion by LEVIN, J.) (agreeing with the lead opinion "that the missing gun and missing accomplice were in the instant case exigent circumstances justifying the warrantless search."). Here, Zeolla saw defendant retrieve the gun from his right waistband area before entering the house and then saw through the picture window that defendant bent down near the living room couch. No weapon was found on defendant's person when a pat-down search of defendant was conducted in the entryway. The officers thus had reason to be concerned that other persons in the house could have gained access to the firearm that defendant had brought into the house, which would create a risk of danger to the police or others inside the dwelling. And given that defendant had entered the house before the officers and that the firearm constituted incriminating evidence, it was reasonable for the officers to ensure that the firearm had not been secreted or moved by defendant or someone else in the house before the officers arrived. Accordingly, the officers' actions in entering the house and seizing the firearm were justified by exigent circumstances.

Next, in his Standard 4 brief, defendant argues that he was denied a fair and impartial trial on the basis of prosecutorial misconduct. We disagree.

To preserve a claim of prosecutorial misconduct, a defendant must make a contemporaneous objection and request a curative instruction in the trial court. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not contemporaneously object or request a curative instruction below with respect to the alleged acts of prosecutorial misconduct that he asserts on appeal. Therefore, the issue is unpreserved.

This Court has explained the standard of review for this issue as follows:

Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context.

Unpreserved issues are reviewed for plain error affecting substantial rights. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect. [*Bennett*, 290 Mich App at 475-476 (quotation marks, brackets, and citations omitted).]

Defendant makes numerous assertions of prosecutorial misconduct. First, defendant contends that the prosecutor made improper remarks in closing argument challenging the credibility or believability of the only defense witness, Loretta Smith, who was defendant's girlfriend and who testified that she had bought the gun found in the house. The prosecutor noted Smith's testimony that "she bought the firearm off of some person on the street; that she doesn't know much about firearms, but she bought it, didn't know if it was loaded, and she put it under a couch cushion in the same house where her two children are." The prosecutor then stated, "If you believe that, there's nothing I can do for you." The prosecutor discussed Smith's inability to recall certain details about the gun. The prosecutor stated, "Is that a person on the stand recalling from memory, or was that somebody sitting on the stand, trying to make up anything she could to save the person that she cares about? I commend her, but I submit to you that you should not believe a word that she says." Later, the prosecutor characterized Smith's testimony as "really far-fetched[,]" again noting that Smith claimed to have bought the gun "despite clearly knowing nothing about it, [and] claiming to put it under her couch cushion with children in the house[.]" Still later, the prosecutor said, "So, once again, I think you have no reason, at all, to believe a word that Ms. Smith said. It just was a lie that wasn't thought through ahead of time. And I think that was made very clear." During rebuttal closing argument, the prosecutor again discussed Smith's testimony about buying the gun, and stated, "Ladies and gentlemen, that's a lie. And you know it. You're smart people. You have reason and you have common sense. And I trust that you brought it with you."

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). A prosecutor is "free to argue the evidence and all reasonable inferences from the evidence as they relate to [the prosecutor's] theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (citation omitted). The prosecutor may argue from the facts that defense witnesses are not worthy of belief. *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). The prosecutor "need not confine argument to the blandest possible terms." *Id*. at 66. Here, the prosecutor's arguments challenging the believability of Smith's testimony were not improper. The prosecutor argued from the facts that Smith's testimony was implausible. The prosecutor highlighted the fact that Smith claimed to have bought the gun and stuck it under her couch cushion even though Smith had children in her house. The prosecutor's suggestion that Smith's testimony should not be believed comprised a permissible argument.

But even if defendant could establish that the prosecutor's argument on this point was somehow improper, defendant fails to establish that any prejudice could not have been alleviated by a curative instruction. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22 (citation omitted). Also, the trial court instructed the jury to decide the case only on the basis of the properly admitted evidence and that the attorneys' arguments and statements did not constitute evidence. "This instruction was sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004) (citations omitted); see also *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Defendant next challenges the following statement by the prosecutor in rebuttal closing argument regarding Harnphanich's response to a question by defense counsel: "And when Officer Harnphanich had trouble understanding her questions, he said: 'I'm trying to understand what you're asking me.' That's somebody who's telling the truth." This argument was in response to defense counsel's arguments that extensively challenged the credibility of Harnphanich, and particularly in response to the following argument by defense counsel:

> And then Officer Harnphanich, remember I was asking him questions? You all saw that. And you can test credibility by his body language, and how long – his long pauses, and: "I'm trying to think how to answer your question."

> No, no, no. You're tryin' to think, because that didn't happen, because you're trying to make something to fill in the gaps.

A prosecutor's remarks must be evaluated in context and in light of defense counsel's arguments. *Thomas*, 260 Mich App at 454. "[A] prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness. But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. at 455 (citation omitted). Here, after defense counsel challenged Harnphanich's credibility during closing argument, the prosecutor offered a responsive argument suggesting that Harnphanich was credible and that he was merely attempting to understand defense counsel's question. The prosecutor did not vouch for Harnphanich's credibility by suggesting some special knowledge concerning his truthfulness. The prosecutor merely argued from Harnphanich's trial testimony that he was credible, and this argument was in response to defense counsel's argument. Hence, the prosecutor's argument on this point was not improper. Further, any prejudicial effect of the prosecutor's argument "could have been alleviated by a curative instruction given on a timely objection[,]" *id*., and the trial court's instructions to decide the case only on the basis of the properly admitted evidence and that the attorney's arguments and statements did not constitute evidence sufficed to eliminate any prejudice. *Id*. at 454.

Next, defendant contends that the prosecutor made a material misstatement in closing argument when he stated that Smith did not know what color the gun was or if it was big or small. In fact, defendant argues, Smith testified that the gun was black and that it was a relatively big pistol. "Although a prosecutor may not argue facts not in evidence or

-7-

mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). In closing argument, the prosecutor stated:

> [Smith] wasn't able to tell you – she was able to say: "The gun might be black." Didn't know if it was a revolver or automatic, didn't know if it had any bullets in it, didn't know if it was small or if it was big.

Smith testified about the gun as follows during the prosecutor's cross-examination:

> *Q.* What kind of gun is it?
>
> *A.* I don't know.
>
> *Q.* You don't know.
>
> *A.* No.
>
> *Q.* Is it a pistol or a rifle?
>
> *A.* It wasn't a rifle, 'cuz a rifle is way bigger than a pistol. So, what kinda' gun did I purchase? I don't know. All I asked for is, hey, a handgun.
>
> *Q.* Do you recall what color it was?
>
> *A.* It may be black. I'm not for sure.
>
> *Q.* Are you sure it was black?
>
> *A.* I said it may be.
>
> *Q.* May be. Okay. Do you recall what the handle looked like?
>
> *A.* Not right off-hand I can't.
>
> *Q.* Now, okay. Does the gun fit in your pocket?
>
> *A.* No, I don't think so. It wasn't small enough, like a two, two.
>
> *Q.* So, it wasn't super small.
>
> *A.* No, it was not.
>
> *Q.* A bigger pistol.
>
> *A.* Yeah.

Later, the following exchange occurred during the prosecutor's cross-examination of Smith:

*Q.* You bought a gun. You're not sure what it looks like, or how big it was, or if it had bullets in it, or what kind of bullets it would take, and you stuck it under the couch, in a house with two children in it?

*THE COURT*: Is that your testimony?

*THE WITNESS*: Yes, I bought a gun.

*CROSS-EXAMINATION (CONTINUED)*

*BY MR. KONING [the prosecutor]*:

*Q.* Do I have that right?

*A.* Yes.

Contrary to defendant's argument, the prosecutor did not mischaracterize Smith's testimony. The prosecutor correctly noted that Smith testified that the pistol might have been black. Regarding the size of the gun, the prosecutor stated that Smith did not know if the gun was small or big. Although Smith at one point indicated that the gun would not fit into her pocket, that it was not "super small[,]" and that it was "[a] bigger pistol[,]" she later expressed agreement with the prosecutor that Smith did not know how big the pistol was. The prosecutor's argument thus contained a reasonable inference from the evidence. In any event, any minimal prejudice was alleviated by the trial court's instructions to decide the case only on the basis of the properly admitted evidence and that the attorneys' arguments and statements did not constitute evidence. See *Thomas*, 260 Mich App at 454.

Defendant next takes issue with the prosecutor's suggestion in rebuttal closing argument that the jury could infer consciousness of guilt from defendant's flight. The prosecutor stated:

And the Judge is going to give you an instruction that when some – on flight – that when somebody runs, you can, you, as the deciders of what is and what isn't fact, you can determine that that's evidence of knowledge that they're guilty of something.

Defendant asserts that this argument comprises a material misstatement and that "these are facts not stated in evidence." Defendant has abandoned this contention because he does not explain how the prosecutor's argument constitutes a material misstatement or how it asserts facts not in evidence. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority. Such cursory treatment constitutes abandonment of the issue.") (quotation marks, brackets, and citations omitted). If defendant is suggesting that there is no evidence that he fled from the police, his argument lacks merit because there was indeed ample testimony that he fled from the police.

Defendant next argues that the prosecutor erred in reading from statutes during closing argument. Defendant claims that this impaired the trial court's function of instructing the jury.

Defendant fails to provide any record citation in support of this assertion; that is, he does not cite any portion of the trial transcript in which the prosecutor read from statutes during closing argument. Nor does defendant present a meaningful appellate argument regarding this assertion. This aspect of the issue has thus been abandoned. See *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015), app held in abeyance 872 NW2d 492 (Mich, 2015) ("Because defendant has failed to sufficiently develop this argument or to provide any record citation in support of his claim, we find that the issue has been abandoned on appeal."). In reviewing the record, we find no indication that the prosecutor read statutes to the jury, let alone that he inaccurately read any statutes to the jury. Presumably defendant may be referring to the fact that the prosecutor listed and discussed the elements of the charged offenses during closing argument, but defendant fails to identify any error by the prosecutor in doing so.

Defendant next contends that the prosecutor misstated the law in closing argument when explaining the concept of possession to the jury. Defendant purports to quote from the transcript, but his quotation is inaccurate. In particular, defendant's quotation suggests that the prosecutor stated that defendant could have jointly possessed the gun even if he did not know the gun was in the house, and that defendant being in the house was all that it took to prove that he was a felon in possession of a gun. We find no such statements by the prosecutor in the trial transcript. Defendant asserts without elaboration that the prosecutor made misstatements in defining the concept of possession, but it appears defendant's cursory argument is premised on his inaccurate quotation of the trial transcript. Defendant's argument has thus been abandoned as inadequately briefed. See *Bosca*, 310 Mich App at 48. Further, the trial court instructed the jury on the meaning of possession, and defendant does not contend that the trial court erred in its instruction on possession. The trial court also instructed the jury: "It is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." Again, jurors are presumed to follow their instructions, and the trial court's instructions therefore sufficed to cure any inadequacy in the prosecutor's explanation of the concept of possession. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Next, defendant contends that the prosecutor improperly discredited the defense theory during the prosecutor's rebuttal closing argument. Defendant challenges the prosecutor's statement that defense counsel was "grabbing at straws for anything to try and find a reasonable doubt where there just isn't, because it's just really straightforward." The prosecutor's comment was not improper. Again, a prosecutor "need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. A prosecutor's remarks must be evaluated in context and in light of defense counsel's arguments. *Thomas*, 260 Mich App at 454. During closing argument, defense counsel challenged the credibility of the officers in connection with their purported lack of consistency in estimating the size of the front window of Smith's house and in referring to the front window as a "large picture window." During rebuttal argument, the prosecutor stated that defense counsel was focusing on questions that did not matter such as whether the front window was called a picture window or merely a front window. The prosecutor then made the comment suggesting that the defense was "grabbing at straws" to "find a reasonable doubt[.]" Viewed in context, the prosecutor's comment was a permissible response to defense counsel's argument.

Defendant also challenges the prosecutor's statement that defense counsel was "trying to get at your heart and make you feel you're doing the right thing by giving a verdict of not

guilty[]" and that the jurors had instead "swore an oath to take your heart out of it, and you use your mind, and let your mind look at what you saw and what you heard, and judge what's a fact, and determine if those facts match the elements of the crimes." The prosecutor's comment that defense counsel was attempting to get at the jurors' hearts and that the jurors were instead required to use their minds was a way of telling the jurors to determine the facts and then determine whether those facts satisfied the elements of the charged offenses. This appears to have been an effort to remind the jurors of their responsibility to decide the case on the basis of the facts, given that defense counsel's closing argument injected emotional appeals, including gratuitous references to defendant's age, race, and gender, as well as to the "national culture" of "[p]olice misconduct[,]" in lieu of confining her remarks to the facts of the case.[1] Viewed in context, the prosecutor's remarks were not improper.

Defendant contends that the cumulative effect of the alleged instances of prosecutorial misconduct caused sufficient prejudice to warrant reversal of his convictions. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*,

---

[1] For example, in her closing argument, defense counsel stated:

> And maybe [the police officers] prejudge [defendant], right? A middle-aged black man walkin' down the street? Do you think if I was walkin' down the street, they'd stop me? Do you think they'd stop and mess with me? No, they're gonna' stop and mess with the middle-aged black man, walkin' down the street, at night, in Detroit. And they mess with him.
>
> \* \* \*
>
> And after [the police] find that gun, they decide, at that moment, who are they gonna' charge, the middle-age black man that you've all heard is a felon, or are they gonna' charge her? No, it's gonna' hurt him more. They're gonna' charge him.
>
> \* \* \*
>
> Now, why would [the police] mess – why would they mess with [defendant]? Well, first of all, national culture, right? Police misconduct is being exposed. That – that, we know.
>
> *MR. KONING [the prosecutor]*: Judge, there's nothing about that in evidence.
>
> *THE COURT*: Counsel, that's – all right. That's –
>
> *MS. ROLPH [defense counsel]*: (Interposing) Movin' on.

274 Mich App at 106. As discussed, defendant has failed to establish that the prosecutor committed misconduct in this case. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*.

Next, defendant argues in his principal appellate brief and in his Standard 4 brief that he was denied the effective assistance of counsel. We disagree.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant filed in the trial court a motion for a new trial or an evidentiary hearing, arguing that defense counsel was ineffective for failing to present evidence that defendant resided at the house located at 15444 Murray Hill and had an expectation of privacy in that house. Defendant's ineffective assistance of counsel argument is therefore preserved with respect to this aspect of the issue. But defendant did not include in his motion for new trial the argument that defense counsel was ineffective for failing to object to the purported instances of prosecutorial misconduct during closing argument. That aspect of defendant's ineffective assistance of counsel argument is therefore unpreserved.

Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *Id.* at 80. Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo. *Id*. Because defendant did not move in the trial court for a new trial or an evidentiary hearing on the basis that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct during closing argument, this Court's review of that aspect of the issue is limited to mistakes that are apparent from the record. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defense counsel is presumed effective. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). A defendant claiming ineffective assistance "has the burden of establishing the factual predicate for the claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

In both his principal appellate brief and his Standard 4 brief, defendant contends that defense counsel was ineffective for failing to present evidence at the suppression hearing supporting the proposition that he resided at the house located at 15444 Murray Hill and that he thus had an expectation of privacy in that house and standing to contest the warrantless entry into the home. As discussed earlier, however, the trial court properly ruled that the warrantless entry into the home was justified by exigent circumstances. The presentation of evidence that defendant purportedly resided at the house therefore would not have made a difference in the outcome of the suppression hearing. Defense counsel was not ineffective for failing to advance a

futile argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant has not established a reasonable likelihood of a different outcome but for defense counsel's alleged error. Regardless of whether defense counsel had presented evidence at the suppression hearing that defendant resided in the home, the suppression motion would have been denied because exigent circumstances justified the warrantless entry into the home.

Defendant's Standard 4 brief also asserts that defense counsel failed to present any case law in support of the suppression motion. In fact, defense counsel's suppression motion and supporting memorandum cited case law. Defendant has thus failed to establish the factual predicate for this part of his claim. *Carbin*, 463 Mich at 600.

In his Standard 4 brief, defendant contends that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct during closing argument. As discussed earlier, however, the prosecutor did not engage in misconduct during closing argument. Therefore, defense counsel was not ineffective for failing to make a meritless argument or raise a futile objection. *Ericksen*, 288 Mich App at 201.

Finally, defendant argues in his Standard 4 brief that the prosecution failed to present sufficient evidence to support defendant's convictions of felony-firearm, felon in possession of a firearm, and felon in possession of ammunition. We disagree.

To determine whether there was sufficient evidence to support a conviction, this Court reviews the evidence de novo, in the light most favorable to the prosecutor, to determine whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Bennett*, 290 Mich App at 472.

The elements of felon in possession of a firearm are that "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). The elements of felon in possession of ammunition are identical to the elements of felon in possession of a firearm, except that the defendant must have possessed ammunition rather than a firearm. See MCL 750.224f. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Bass*, 317 Mich App at 268-269 (quotation marks and citation omitted). Felon in possession of a firearm may serve as the predicate felony for a felony-firearm conviction. See MCL 750.227b; *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003).

The parties stipulated that defendant had previously been convicted of a felony and that he did not have a right to possess the firearm or the ammunition on the date of the offenses in this case because the requirements for regaining eligibility to possess a firearm or ammunition had not been satisfied. Police officers testified that they observed defendant remove a handgun from underneath his jacket or sweatshirt as he entered the house located at 15444 Murray Hill.

After defendant entered the house, the officers saw through a front window that defendant bent down in an area of the house to the right side of the front door. After entering the house and detaining defendant, the police recovered a handgun that was protruding from underneath a cushion of a couch located in the area where the police had seen defendant bending down. The gun appeared similar in size and color to the gun that defendant had pulled from his waist when entering the house. The gun was a .32 caliber blue steel revolver with two live rounds in it. Given the above evidence and the parties' stipulations, a rational trier of fact could have found that defendant was a felon who possessed a firearm and ammunition before his right to do so was formally restored. There was therefore sufficient evidence to support his convictions for felon in possession of a firearm and felon in possession of ammunition. The evidence also supports a conclusion that defendant possessed a firearm while committing the felony of felon in possession of a firearm. There was thus sufficient evidence to support his felony-firearm conviction.

Defendant makes a cursory assertion that the officers' testimony that they saw defendant remove the handgun before entering the house may not be considered because defendant was acquitted of the charged offense of carrying a concealed weapon, MCL 750.227. Defendant does not cite any authority in support of this assertion or elaborate on why he thinks his acquittal of one offense precludes considering the officers' testimony when determining whether there was sufficient evidence to support his convictions for other offenses. Defendant has thus abandoned this argument. See *Matuszak*, 263 Mich App at 59 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority. Such cursory treatment constitutes abandonment of the issue.") (quotation marks, brackets, and citations omitted).

Defendant also notes that the officers did not see the gun or defendant's arms or hands when they saw him through the front window bending down, that fingerprint testing of the gun was inconclusive, that Smith claimed the gun belonged to her, and that the gun was not recovered from defendant's person. None of these facts alters the conclusion that there was sufficient evidence to support defendant's convictions. The officers saw defendant remove a gun from underneath his jacket or sweatshirt as he entered the house; the fact that the gun and defendant's arms and hands were not visible through the front window when he leaned down does not alter the fact that the officers saw defendant holding the gun as he was entering the house. Moreover, the evidence supports a reasonable inference that defendant possessed the gun inside the house because the gun was found protruding from under a couch cushion in the area where defendant had been seen bending down. The inconclusive fingerprint testing likewise does not change the fact that the officers testified that they saw defendant holding the gun. Eyewitness testimony is sufficient evidence to support a conviction; corroborating physical evidence is not required. See *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976). Smith's testimony that the gun belonged to her again does not alter the fact that the officers testified to their observations of defendant holding the gun. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. The fact that the gun was not recovered from defendant's person is explained by the fact that defendant entered the house before the officers and was seen through the front window leaning down in the area of the couch from which the gun was later recovered.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan